**Ofelia ZUNIGA, Appellant,**

v.

**Ramiro ZUNIGA, Jr., Appellee.**

**No. 13–83–224–CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 19, 1984.

Glen A. Barnard, Harlingen, for appellant.

L. Javier Cavazos, Harlingen, for appellee.

Before BISSETT, KENNEDY and GONZALEZ, JJ.

OPINION

BISSETT, Justice.

This is an appeal by Ofelia Zuniga from portions of a judgment rendered in a divorce proceeding.

Ofelia Zuniga, hereinafter referred to as "the wife," filed suit against Ramiro Zuni-

ga, Jr., hereinafter referred to as "the husband," for divorce, custody of minor children, support for the children, and division of community property. The husband filed a cross-action. Trial was to the court. Judgment was rendered on February 17, 1983.

The trial court granted a divorce to the husband. That portion of the judgment was not challenged by the wife and is not before us in this appeal.

The parties were married on September 18, 1968, and separated in April, 1982. Four children, each of whom was under the age of eighteen (18) years at the time of trial, were born to them during their marriage and were living at the time of trial. They are: Noel Zuniga, a male who was born on December 18, 1970; Oscar Zuniga, a male who was born on January 5, 1975; Ramiro Zuniga, a male who was born on November 14, 1975; and Javier Zuniga, a male who was born on February 17, 1981.

In the decree, the husband was appointed managing conservator of Noel, Oscar and Ramiro, and the wife was appointed managing conservator of Javier. The husband was ordered to pay child support in the amount of $20.00 per week to the wife for the support of the minor child Javier, and the wife was ordered to pay child support in the amount of $20.00 per week per child to the husband for the support of the minor children, Noel, Oscar and Ramiro.

According to the judgment, all of the property named therein was community property of the parties. It consisted of: 1) 1.299 acres of land in Cameron County, Texas, and a house located thereon; 2) furniture in the house, including a sewing machine and personal items of clothing; 3) a 1977 Chevrolet automobile and a 1981 Chevrolet automobile. The wife was awarded the 1981 Chevrolet automobile, the sewing machine and all of her personal clothing in the house. All of the remaining items of property were awarded to the husband. The award to each party was made "subject to any indebtedness charged against it."

The wife, in her first point of error, complains that, with the exception of Noel, the trial court abused its discretion "in dividing the children between the parties." We disagree.

TEX.FAM.CODE ANN. § 14.01 (Vernon 1975), in relevant part, reads:

"(a) . . . If the court finds that the parents are or will be separated, the court shall appoint a managing conservator. (b) . . . In determining which parent to appoint as managing conservator, the court shall consider the qualification of the respective parents without regard to sex of the parent."

■ The paramount concern of courts in determining the custody of a child is the best interest of the child. This has long been the law of this State and needs no citations.

■ The trial court has wide discretion in determining the best interest of a child and in awarding custody of the child, and its award will not be disturbed unless an abuse of discretion is clearly shown. *Mumma v. Aguirre,* 364 S.W.2d 220 (Tex.1963).

■ It is well settled in Texas that the custody of two or more children of a marriage should not be divided, except for clear and compelling reasons. *O. v. P.,* 560 S.W.2d 122 (Tex.Civ.App.—Fort Worth 1977, no writ); *Griffith v. Griffith,* 462 S.W.2d 328 (Tex.Civ.App.—Tyler 1970, no writ); *Meyer v. Meyer,* 361 S.W.2d 935 (Tex.Civ.App.—Austin 1962, writ dism'd); *Autry v. Autry,* 350 S.W.2d 233 (Tex.Civ.App.—El Paso 1961, writ dism'd); *De Gaish v. Marriott,* 345 S.W.2d 585 (Tex.Civ.App.—San Antonio 1961, no writ); *Beasley v. Beasley,* 304 S.W.2d 158 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.); *Beadles v. Beadles,* 251 S.W.2d 178 (Tex.Civ.App.—Texarkana 1952, no writ).

■ The three older children, Noel, Oscar and Ramiro, lived with their father following the separation of the parties in April, 1982, and were living with him at the time of trial. During that interval, Javier, the youngest child, lived with his mother. The husband testified that he wanted custody of all four children and that the three older

children wanted to live with him. He further testified: 1) he worked from seven o'clock in the morning until six o'clock in the evening, Monday through Friday and a half day on Saturdays; 2) on schooldays, he got the children up at six o'clock, fed them, dressed Oscar and Ramiro, and took all three to his mother's home, where they boarded the school bus at fifteen minutes past seven o'clock; 3) after school, the children would go to his mother's house, where he would pick them up after work, "make supper for them, wash dishes, clean the kitchen and tell them to take a bath"; 4) he spent his spare time with the children and with household chores; 5) during the marriage, the wife, who worked on weekdays and came "in late" from work would spend "ninety percent of the time" at her mother's house on Saturdays and Sundays; 6) the "little ones did not go with her," and when she returned home, about "seven or seven-thirty," the children had already been fed supper by him; 7) during the marriage, the wife did not take care of the house, and did not do any of the cooking, except that "once in a while she would cook and leave the food there and say that she was going to her mother's"; 8) the children loved both parties, but "they want to stay with daddy."

The husband, when asked if he thought that the children would be better off with their mother, replied in the negative and when asked why, said:

"A. She never took care of them. I was the one that always took care of them, even the baby, she was not there, never there and—I had to change the pampers, feed him at three o'clock in the morning and then I had to get up and feed the rest of them again."

Q. And your wife just merely existed, she didn't help around the House?

A. She got up maybe once in a while.

Q. She didn't participate in doing the dishes and cleaning the house?

A. She washed dishes, but she didn't clean the house.

Q. She didn't cook?

A. Once in a while she would cook and leave it there and go to her mothers. 'There is the food, I am going to my mother's.'"

He admitted that his wife took good care of young Javier, and in response to the following question, answered:

"Q. He is well clothed, feed (sic), taken care of and stuff like that?

A. Yes.

Q. If she is good enough to have the custody of Javier, why would she not be equally good with say Oscar and Ramiro?

A. Because she could not take care of them when they were in the house, when something happened she had to call me.

Q. Isn't the reason she had to call you because you had the money and she had to take them to the doctor and she needed the money?

A. No, sir. In the house when they were mean she had to call me.

Q. When they would get mean?

A. Yes, kids will be kids, you know."

He did agree that his wife "is fit to care for an have custody of the smaller child."

Noel was the only child who testified. He said that he wanted to live with his father because "he always takes care of me and always makes supper for me." He also said that Oscar and Ramiro wanted to live with their father. He further testified that his father "did the cooking" for him, and that "sometimes, like on Sundays," his mother "would cook a little and just leave it there and tell us to eat," and "would go to her mother's."

The wife disputed most of the statements made by the husband and Noel. She testified that she was working for Gorges Meat; she worked "from eight o'clock in the morning until midnight" about three days a week, and when she wasn't working late she would "wash and cook for the children and bathe them." She further testified that while she and her husband were living together, "I bought things for the house, clothes for the kids, groceries and sometimes I would give him (her husband) money." She wanted "to have them (the children) all of the time," and stated that if she

was awarded custody of the three younger children, she would be able to take care of them.

The Cameron County Child Welfare Department, in obedience to court order, filed a "Social Study" in this case. The caseworker who made the study, stated in his report that Noel, Oscar and Ramiro preferred to live with their father. He recommended that the husband be appointed managing conservator of Noel, Oscar and Ramiro. There is ample evidence and compelling reasons to justify the division of custody in this case. We hold that the trial court properly exercised sound discretion in appointing the husband managing conservator of the three older children. The first point of error is overruled.

The trial court ordered the husband to pay the wife $20.00 per week for the support of the minor child Javier, and ordered the wife pay the husband $20.00 per week per child for the support of the minor children, Noel, Oscar and Ramiro. The wife complains in her second point of error that the trial court abused its discretion in setting such amounts of money for child support for the three older children.

The husband was 41 years old at the time of trial, and had a 10th grade education. His work experience was that of a farm laborer and of a gasoline station attendant. His monthly take-home pay was approximately $651.00 per month, and, in addition, he and the three older children received $92.00 per month in food stamps. His house payments, car payments, insurance premium, utilities, car expenses, and food costs approximately $575.00 per month.

The wife was 35 years old at the time of trial. She was a high school graduate, had completed one year in a business school, had some experience in computers, and had some experience as a bookkeeper. Her take-home pay up to the day preceding the day of trial, when she was fired, was approximately $1,075.00 per month. After the wife lost her job, she had a job-offer to work at minimum wage. She did, however, recognize her ability, as a result of her work experience, to obtain work which would pay more than minimum wage.

■ A trial court's order as to child support will not be disturbed unless the complaining party can show a clear abuse of discretion. *Brito v. Brito,* 346 S.W.2d 133 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.); *Thompson v. Thompson,* 572 S.W.2d 761 (Tex.Civ.App.—Tyler 1978, no writ); *Boriack v. Boriack,* 541 S.W.2d 237 (Tex.Civ.App.—Corpus Christi 1976, writ dism'd.)

■ A mother, as well as a father, has the duty to support his or her minor children. TEX.FAM.CODE ANN. § 4.02 (Vernon Supp.1982–83). This duty is not dependent solely on each parent's current earnings. In determining the amount of child support, the court should consider such factors as the financial resources available to each parent, the obligations due and owing by each parent, non-financial contributions to the children, and the standard of living to which the children have been accustomed. *Strauss v. Strauss,* 619 S.W.2d 18 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Grandinetti v. Grandinetti,* 600 S.W.2d 371 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *Hazelwood v. Jinkins,* 580 S.W.2d 33 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

■ Considering the age, education, work experience, and earning capacities of the parties, the trial court did not clearly abuse its discretion in ordering the wife to pay $20.00 per week per child as child support for each of the three older children. The second point of error is overruled.

In her third point of error, the wife contends that the trial court abused its discretion in its division of the community property of the parties. We disagree.

TEX.FAM.CODE ANN. § 3.63 (Vernon Supp. 1982–83), in relevant part, provides:

"(a) In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."

"It is well established that the trial court has wide discretion in the division of property on divorce and it will be disturbed only when an abuse of discretion is shown." *Cockerham v. Cockerham,* 527 S.W.2d 162, 173 (Tex.1975).

In dividing community property in a divorce case, the trial court may consider such factors as the age and needs of the children, the age and physical condition of the parties, the parties' relative need for support as related to marriage as evidenced by a disparity in earning power and financial obligations. *Trevino v. Trevino,* 555 S.W.2d 792, 802–03, (Tex.Civ.App.—Corpus Christi, 1977, no writ).

In the instant case, the parties were married for a period of approximately 14.4 years, but during the last 14 months of the marriage, they were separated when the wife voluntarily left the home.

While the husband was awarded the lot and the house located thereon and most of the contents located therein, he was made responsible individually for any indebtedness on said property. The house and lot were subject to a mortgage with a balance due thereon of approximately $548.00, and a home improvement loan of approximately $8,000.00. He was paying those debts off in installments of approximately $192.00 per month.

There was no evidence as to the value of any of the community property awarded to the husband. There is no evidence concerning the value and condition of the property awarded to the wife.

The record shows that the wife has more education, more diversified job experience, more technical and marketable skills, and more earning potential than the husband. In addition, the Social Study indicated that the wife resided with her parents at the time of trial; this is some indication that her parents contributed something to her support and to the support of the child Javier.

Viewing the record in its entirety, we hold that the unequal division of the community property is justified by the circumstances. See *Boriack v. Boriack,* supra. The trial court did not abuse its discretion in making an unequal division of the community property. The third point of error is overruled.

The judgment of the trial court is AFFIRMED.