In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00295-CV


____________________



IN THE INTEREST OF J.M.W.


 




On Appeal from the 279th District Court


Jefferson County, Texas


Trial Cause No. F-201,650






MEMORANDUM OPINION



 Sherri Lynn Senegal filed a suit affecting the parent-child relationship of J.M.W. The
trial court appointed Senegal as a joint managing conservator of J.M.W. along with the
child's parents, Regina Fisher and Roy Wilson. Regina Fisher appeals the trial court's
judgment and raises nineteen issues for consideration in this appeal. We affirm the judgment
of the trial court.

 The appellant presents her first two issues together. In issue one, she contends that
the evidence is legally and factually insufficient to overcome the parental presumption. In 
her second issue, Fisher argues that former Section 14.02(c) controls over the non-substantive revision effected by the enactment of Section 153.131 of the Texas Family Code, 
and that former Section 14.02 precludes a non-parent from having more rights than a
possessory conservator.

 Fisher premises her argument on the assumption that former Chapter 14 of the Texas
Family Code limited a non-parent to the rights of a possessory conservator. She refers to
former Section 14.02(c), which she claims did not allow a trial court to grant a non-parent
the right to designate the primary residence of the child. Before its repeal, former Section
14.02(c) stated, in pertinent part, as follows:

 A managing conservator who is not the parent of the child has the
following rights, privileges, duties, and powers, subject to Subsection (b) of
this section, to the rights, privileges, duties, and powers of a possessory
conservator as provided in Section 14.04 of this code, and to any limitation
imposed by court order in allowing access to the child:


 (1) the right to have physical possession, to direct the moral and
religious training, and to establish the legal domicile of the child[.]


Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 2, 1993 Tex. Gen. Laws 2989, 2990-91,
repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282. 
 In addition, former Section 14.021(j) stated:

 The procedural and substantive standards established by this chapter
apply also to a joint managing conservator who is not a parent of the child,
subject to Section 14.02(b) of this code.


Act of May 29, 1987, 70th Leg., R.S., ch. 744, § 6, 1987 Tex. Gen. Laws 2666, 2669,
repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282. 

 Before its repeal, former Section 14.02(b) stated in pertinent part, as follows:

 Unless by written findings the court determines it would not be in the
best interest of the child, a parent appointed as a conservator of the child
retains the following rights, privileges, duties, and powers of a parent, subject
to any limitation imposed by court order in allowing access to the child. . . .


Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 2, 1993 Tex. Gen. Laws 2989, 2990,
repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282. 

 Furthermore, former Section 14.01(b) provided:

 A parent shall be appointed sole managing conservator or both parents
shall be appointed as joint managing conservators of the child unless:


 (1) the court finds that appointment of the parent or parents would not
be in the best interest of the child because the appointment would significantly
impair the child's physical health or emotional development; or


 (2) a person who is not a parent seeks appointment as managing
conservator of the child by intervening in or commencing a suit affecting the
parent-child relationship, . . . and the court finds that:


 (A) the child's parent, if the child has only one parent, or parents
have voluntarily relinquished possession and control of the child to the
person or agency for a period of one year or more a portion of which
was within 90 days preceding the date of intervention or
commencement of the suit or proceeding; and


 (B) the appointment of the person as managing conservator of
the child is in the best interest of the child.


Act of May 29, 1989, 71st Leg., R.S., ch. 370, § 1, 1989 Tex. Gen. Laws 1461, 1461-62, 
repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282. 
 Read together, these former statutes reveal that a non-parent could be appointed as a
joint managing conservator with the power to establish the legal domicile of the child. The
Supreme Court held that under former Chapter 14, "the test for the appointment of a parent
and nonparent as joint managing conservators is a best interest of the child test." Brook v.
Brook, 881 S.W.2d 297, 299 (Tex. 1994). In so doing, the court rejected the appellant's
argument for application of the higher standard found in former Section 14.01(b). Id. at 298,
300. Thus, it appears the former statute was not more restrictive than the recodified version
of the statute now located in Chapter 153 of the Texas Family Code. See Tex. Fam. Code
Ann. § 153.001-.611 (Vernon 2008). We overrule issue two.

 Fisher contends that Senegal failed to rebut the presumption that as a parent of
J.M.W., Fisher should be appointed as sole managing conservator. See Tex. Fam. Code
Ann. § 153.131 (Vernon 2008). Section 153.131 of the Family Code provides that

 (a) Subject to the prohibition in Section 153.004 [History of Domestic
Violence], unless the court finds that appointment of the parent or parents
would not be in the best interest of the child because the appointment would
significantly impair the child's physical health or emotional development, a
parent shall be appointed sole managing conservator or both parents shall be
appointed as joint managing conservators of the child.


 (b) It is a rebuttable presumption that the appointment of the parents of
a child as joint managing conservators is in the best interest of the child. A
finding of a history of family violence involving the parents of a child removes
the presumption under this subsection.


Tex. Fam. Code Ann. § 153.131.


 Fisher argues the record lacks specific evidence of her unfitness. For authority, she
cites a case in which a nonparent whose petition for sole managing conservatorship was
denied in the trial court challenged the sufficiency of the evidence rebutting the parental
presumption. See In the Interest of De la Pena, 999 S.W.2d 521, 525, 532 (Tex. App.--El
Paso 1999, no pet.). The court held that the trial court did not abuse its discretion in
appointing the parent and the nonparent as joint managing conservators when there was 
evidence that uprooting a child could be harmful to a child's sense of security and ability to
trust, but there was no indication that any of the child's visits with her father resulted in
disruptive or uncharacteristic behavior or that she suffered any impairment other than some
mild distress arising from a comment her father had made. Id. at 533. Turning to the issue
of primary possession, the court applied the parental presumption because primary possession 
is "at the very core of managing conservatorship[.]". Id. at 534. Thus, the court held that the
trial court could award primary possession to a nonparent joint managing conservator only
when the evidence showed that awarding primary possession to the parent joint managing
conservator would result in serious physical or emotional harm to the child. Id. at 534-35. 
The court upheld the trial court's order placing the child with the parent because the
nonparent failed to rebut the presumption that the parent should have primary possession of
the child. Id. at 536.

 The San Antonio Court of Appeals declined to follow De la Pena on the issue of
primary possession. Gardner v. Gardner, 229 S.W.3d 747, 752 (Tex. App.--San Antonio
2007, no pet.). In Gardner, the appellant was the parent of two boys and a girl and the
appellee was not the parent of one of the boys. Id. at 750. The parties agreed on joint
conservatorship in their mediated divorce and submitted only the issue of primary possession
of the two boys to the trial court. Id. at 751. On appeal, the court declined to apply the
presumption found in Section 153.131 because that statute "clearly states the presumption
applies only to determinations of conservatorship." Id. at 752. The appellant in that case had
accused the appellee of sexually abusing their daughter and Child Protective Services found
no significant risk factors and closed the case. Id. at 753. The appellee produced evidence
that he had made dramatic changes in his life and that he provided a stable environment for
the boys. Id. The court held that the trial court had sufficient information on which to
exercise its discretion in awarding primary possession to the nonparent joint managing
conservator even though the boys would be separated from their sister. Id. at 753-54.

 In reviewing a joint managing conservatorship between a parent and a nonparent
under the former statute, the Supreme Court construed that the legislative purpose of Family
Code Section 14.01(1) was "to require a heightened standard in cases where no parent is to 
be awarded any type of managing conservatorship" and construed the phrase "a parent" to
refer to the opposite of "no parent" and found that the phrase did not "serve to grant to each
parent a right to be appointed absent a 'significant impairment' finding." Brook, 881 S.W.2d
at 299 n.2. Of course, Brook predates the United States Supreme Court's decision in Troxel. 
Troxel v. Granville, 530 U.S. 57, 68-69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[S]o long
as a parent adequately cares for his or her children (i.e., is fit), there will normally be no
reason for the State to inject itself into the private realm of the family to further question the
ability of that parent to make the best decisions concerning the rearing of that parent's
children."). Fisher addresses the constitutional issue in issues eight through eleven, which
are discussed later in this opinion. Assuming that the constitutional concerns expressed in
Troxel require a trial court to apply the parental presumption found in Section 153.131 to the
circumstances in the present case, the trial court did not abuse its discretion in finding that
Senegal rebutted the presumption.

 In a case in which a nonparent seeks appointment as a joint managing conservator,


 [t]he presumption that a parent should be appointed or retained as managing
conservator of the child is rebutted if the court finds that:


 (1) the parent has voluntarily relinquished actual care, control, and
possession of the child to a nonparent, licensed child-placing agency, or
authorized agency for a period of one year or more, a portion of which was
within 90 days preceding the date of intervention in or filing of the suit; and


 (2) the appointment of the nonparent or agency as managing
conservator is in the best interest of the child. 


Tex. Fam. Code Ann. § 153.373.


 Senegal testified that J.M.W. began staying at her house on weekends in 2005. 
According to Senegal, sometimes Fisher would not pick him up, so Senegal or her husband
would stay home from work to care for the child. Senegal testified that she and Fisher
decided J.M.W. would live with Senegal, and the child lived with her for two years. Senegal 
enrolled the child in daycare and paid for the service. J.M.W. attended the daycare from
August 2006 through June 2007. Fisher provided no support to Senegal. Fisher admitted 
that J.M.W. was enrolled in the daycare for ten months and that he was living with Senegal
during that time. A witness who worked with both women in 2005 and 2006 testified that
J.M.W. was living with Senegal. This witness testified that on some Mondays Senegal and
Fisher would discuss Fisher's failure to pick up the child for the weekend. Although the trial 
court heard conflicting evidence regarding the length of time that J.M.W. lived with Senegal,
there is no dispute that Fisher voluntarily relinquished her possession and control of the child
to Senegal during that time.

 As the finder of fact for the proceeding, the trial court is the exclusive judge of the
credibility of the witnesses and the weight to be given their testimony. Shear Cuts, Inc. v.
Littlejohn, 141 S.W.3d 264, 270-71 (Tex. App.--Fort Worth 2004, no pet.). The trial court
heard testimony that the child was living with Senegal when Senegal enrolled the child in
daycare and that the child started attending the daycare in August 2006. Senegal testified that
the child lived with her for "right at two years." She was still caring for the child when the
child started attending a public elementary school in August 2007. Senegal filed the suit on
September 14, 2007.

 In addition to the evidence that Fisher voluntarily relinquished the care, control and 
possession of J.M.W. to Senegal for a period of one year or more, the record contains
evidence from which the trial court could determine that it would be in the best interest of
the child for Senegal to be appointed as the joint managing conservator with the right to
designate the child's primary residence. Fisher limits her argument to a contention that the
evidence does not establish that J.M.W. is in imminent danger of physical or emotional harm
and does not challenge the trial court's finding on the ground that the evidence does not
support the trial court's finding under the Holley factors. See Holley v. Adams, 544 S.W.2d
367, 371-72 (Tex. 1976). The trial court heard testimony that the child had bonded with
Senegal and her family. Senegal provided a home for J.M.W. and assisted with his
education. The trial court also heard evidence that Fisher did not provide a stable
environment for J.M.W.

 The trial court's finding is supported by the evidence adduced at trial. Therefore, the
trial court did not abuse its discretion in ruling that Senegal rebutted the parental
presumption. We overrule issue one.

 Fisher presents her third through seventh issues together. Issue three challenges the
legal and factual sufficiency of the evidence offered to rebut the parental presumption. Issue
four contends the trial court erred in denying an evidentiary hearing on Fisher's motion for
new trial. Issue five contends the technical rules of procedure used to deny Fisher an
evidentiary hearing on the motion for new trial must be disregarded in light of allegations of
sexual abuse. Issue six contends the trial court erred in denying an evidentiary hearing on
Fisher's motion for new trial based on newly discovered evidence. Issue seven contends the
case should be remanded to the trial court for a hearing on Fisher's motion for new trial.

 Issues four through seven all claim that the trial court denied an evidentiary hearing
on the motion for new trial. The record of the hearing shows that the trial court provided
Fisher with an opportunity to present evidence and arguments in support of her motion. 
Therefore, she was not, as she argues, denied an evidentiary hearing on her motion for new
trial.

 Fisher's brief argues that Fisher's motion for new trial amply raised best interest
issues that had to be addressed to satisfy constitutional and statutory standards. She argues
that she showed that Senegal offered false or unfounded testimony during the trial and that
the matters stated in Fisher's affidavits must be taken as true because Senegal filed no
controverting affidavits to refute Fisher's claims. Fisher contends the trial court erred in
refusing to hear her newly discovered evidence and further erred in holding her to a due
diligence standard regarding her failure to present that evidence at trial.

 The trial court conducted a hearing on Fisher's motion for new trial. Counsel for
Fisher referred the trial court to records from the Department of Family and Protective
Services. The records concerned the charges Fisher made against Senegal's daughter. 
Although Fisher was aware before trial that the Department had opened a case and conducted
an investigation into an allegation of sexual abuse of J.M.W., counsel argued Fisher was not
aware that records existed until the Department employee testified. Fisher also argued that
her son's testimony was newly available because he was in school on the day of the trial. 
The son would have provided testimony about his grades to rebut the trial testimony
regarding his disciplinary record. Fisher also argued that she could not have anticipated the
need to produce a school district employee to testify that J.M.W. had been using his older
sister's nap mat. Fisher also argued that her grandmother would testify that Fisher had not
been evicted from one of the homes where Fisher used to live. Finally, Fisher argued that
in a new trial her mother would testify that the child was with them on June 9 and that the
child was with Senegal for only one weekend in August. This witness had testified at the
trial.

 On appeal, Fisher argues that the trial court erred in requiring diligence in obtaining
witnesses and contends the trial court should have appointed an attorney for Fisher or for
J.M.W. (1) This is neither a case in which the Department of Family and Protective Services
sought custody of the child, nor is it a case in which any party seeks to terminate Fisher's
parental rights. Fisher was named a joint managing conservator of J.M.W. Even assuming
indigence, the trial court is not required to appoint counsel to represent a parent in a private
custody suit. See In the Interest of J.C., 250 S.W.3d 486, 489 (Tex. App.--Fort Worth 2008,
pet. denied) (private termination). Even in a termination case in which an indigent parent has
a right to appointment of counsel, the trial court does not abuse its discretion in failing to
appoint counsel when it is not readily apparent that the parent is indigent and the parent does
not request appointment of counsel. See In the Interest of G.K., No. 09-08-00506-CV, 2009
WL 2616926, at *4 (Tex. App.--Beaumont Aug. 27, 2009, no pet. h.) (mem. op.).

 Fisher contends she could not have discovered the Department's record because such
records are only available to an attorney. Department records may be obtained by court
order. Tex. Fam. Code Ann. § 261.201(b) (Vernon Supp. 2009). Furthermore, the fact that
there was an investigation was known to Fisher and she could have developed testimony
through cross-examination of the Department employee who testified during the trial. 
Likewise, Fisher may not have anticipated that her second son's disciplinary history might
come up in the trial, but she was aware that her fitness as a parent and her home environment
would be issues in the hearing. Testimony that J.M.W.'s sister resides with Fisher had been
offered in the trial and on cross-examination Senegal proved that the child's grandmother
would claim the child as a dependent on her tax return for the current tax year. Thus, the trial
court could have found that the allegedly newly discovered evidence was either known to
Fisher before trial or would have been known to her in the exercise of reasonable diligence.

 We review the denial of a motion for new trial for an abuse of discretion. In the
Interest of R.R. & S.J.S., 209 S.W.3d 112, 114 (Tex. 2006). A party seeking a new trial on
the ground of newly discovered evidence must show: (1) new evidence has come to her
knowledge since the trial; (2) it was not owing to the want of due diligence that the evidence
did not come to her knowledge sooner; (3) the evidence is not cumulative; and (4) the
evidence is so material that it would probably produce a different result if a new trial were
granted. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983), overruled on other
grounds by Moritz v. Preiss, 121 S.W.3d 715 (Tex. 2003). The trial court expressed two
main concerns during the hearing on Fisher's motion for new trial: her failure to establish
that the evidence was not known to her at the time of trial, and her failure to show that certain
documents could not have been discovered through the exercise of due diligence. Fisher
argues that the trial court should have granted her motion for new trial notwithstanding her
failure to establish diligence. The case on which she relies concerned a motion for new trial
that contained affidavits that revealed the parent granted custody had a violent temper and
had exerted harsh physical discipline on the children. See C_ v. C_, 534 S.W.2d 359, 361-62
(Tex. Civ. App.--Dallas 1976, writ dism'd w.o.j.). That court noted that "[n]o abuse of
discretion is shown unless the evidence presented in support of the motion, and not offered
at the original trial, strongly shows that the original custody order would have a seriously
adverse effect on the interest and welfare of the children, and that presentation of such
evidence at another trial would probably change the result." Id. at 362. Here, the evidence
presented in the motion for new trial is not so extreme or compelling to remove the trial
court's discretion in weighing the merits of the motion for new trial. We overrule issues
three through seven.

 Fisher groups issues eight through eleven. Issue eight contends the trial court violated
Fisher's rights under the Fourteenth Amendment of the United States Constitution. Issue
nine contends the trial court's failure to find Fisher unfit to act as a joint managing
conservator precludes the trial court from granting a nonparent conservatorship rights. Issue
ten contends the trial court applied Family Code Section 153.131 unconstitutionally by
finding the parental presumption had been overcome. Issue eleven contends the trial court's
finding that the appointment of the child's parents as joint managing conservators is not in
the best interest of the child conflicts with the trial court's conclusion that the
conservatorship ordered in the decree is in the best interest of the child.

 Fisher argues that the constitutional right of a parent to direct her child's upbringing
prohibits the trial court from awarding the right to determine the child's primary residence
to Senegal, notwithstanding the trial court's finding of fact that J.M.W.'s current
environment with Fisher would significantly impair the physical health or emotional
development of J.M.W. Fisher argues this factual finding is not sufficient to overcome the
presumption expressed in Troxel. See Troxel, 530 U.S. at 68 ("[T]here is a presumption that
fit parents act in the best interests of their children."). Although it was contested at trial, the
record contains evidence that Fisher did not adequately care for J.M.W. and instead left him
with Senegal for a period in excess of one year. Family Code Section 153.373 acknowledges
that under appropriate circumstances voluntary relinquishment for a period of one year or
more rebuts the parental presumption. See Tex. Fam. Code Ann. § 153.373. Unlike the
statute in Troxel, Section 153.373 applies only in a situation in which the parent has
voluntarily relinquished her right of control over the child to a nonparent for a substantial
enough period of time to impact the child's physical health and emotional wellbeing.

 In Quilloin v. Walcott, the United States Supreme Court considered a biological
father's due process challenge to a husband's petition to adopt his wife's eleven-year-old
child. Quilloin v. Walcott, 434 U.S. 246, 248, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). The
biological father had contact with the child and was subject to essentially the same child
support obligation as a married father would have been, but he had never petitioned to
legitimize the child. Id. at 249, 256. Noting that the biological father had never shouldered
any significant responsibility with respect to the daily supervision of the child and that the
child was remaining in a family unit already in existence, the Supreme Court held that the
biological father's substantive due process rights were not violated by a "best interests of the
child" test. Id. at 254-56. Although Quilloin concerned a longer period of time than what
is involved in this case, it also concerned a more significant loss of parental rights. Id. at
255. Here, the intrusion on the parent's rights, although significant, is justified because the
parent voluntarily relinquished her rights to the petitioner for a considerable period of time.

 In this case, the statute describes the particular special circumstances justifying
interference with the parent's custodial rights. That circumstance, the voluntary
relinquishment of the care, control and possession of the child to a nonparent for a period of
a least one year, limits the exercise of the power granted by the statute to circumstances in
which the child's physical and emotional wellbeing is likely to be affected. Additionally, for
the statute to be applicable to a particular case, the trial court must also find that appointment
of a nonparent as a conservator is in the best interest of the child. See Tex. Fam. Code Ann.
§ 153.373(2). Furthermore, the statute does not do more than rebut the presumption found
in Family Code Section 153.131. See Tex. Fam. Code Ann. § 153.131. In this case, both
parents are joint managing conservators along with the nonparent to whom the parent
voluntarily relinquished the actual care, control, and possession of the child for a period of
one year or more. Under these circumstances, Fisher has not shown a violation of her
substantive due process rights.

 Fisher contends that the trial court entered contradictory findings. The trial court
found that the appointment of the child's parents as joint managing conservators would not
be in the child's best interest, and also expressly found that the child's current environment
with Fisher would significantly impair the child's physical health and/or emotional
development. We understand that the trial court was attempting to distinguish the findings
related to whether one or both parents should be appointed as sole or joint managing
conservators to the exclusion of the petitioner from the findings regarding whether the
parents and Senegal should be appointed joint managing conservators with Senegal having
the right to designate the child's primary residence. The trial court's decision that it would
not be in the child's best interest to primarily reside with Fisher is not inconsistent with the
trial court's decision to allow Fisher to be a managing conservator. The Family Code permits
such an arrangement. See Tex. Fam. Code Ann. § 153.372(a) ("[a] nonparent . . . appointed
as a joint managing conservator may serve in that capacity with either another nonparent or
with a parent of the child."). We overrule issues eight through eleven.

 Fisher challenges Senegal's standing to file a petition in Fisher's grouped issues
twelve through fourteen. Issue twelve contends Senegal did not have actual care, control,
and possession of the child during the ninety-one-day period before the suit commenced. 
Issue thirteen contends that because standing affects the trial court's jurisdiction, the trial
court abused its discretion in failing to grant Fisher's motion for new trial. Issue thirteen
contends Senegal never conclusively proved she had standing to file suit. The record shows
that the trial court heard evidence on and determined the petitioner's standing in the
temporary hearing, heard evidence relating to standing during the trial, and considered
evidence controverting the claim of standing in the hearing on the motion for new trial.

 Senegal alleged standing to file an original suit as "a person, other than a foster parent, 
who has had actual care, control, and possession of the child for at least six months ending
not more than 90 days preceding the date of the filing of the petition[.]" Tex. Fam. Code
Ann. § 102.003(a)(9) (Vernon 2008). The trial court made an inquiry regarding Senegal's
standing in the temporary hearing conducted shortly after Senegal filed suit. Senegal testified
that she first began taking care of J.M.W. when Senegal's niece asked her if she could help
with J.M.W.'s care on weekends. At that time, Fisher's daughter was living with Fisher's
mother and the two teenaged boys were self sufficient. Senegal had J.M.W. during the
Hurricane Rita evacuation of September 2005. Senegal returned J.M.W. to Fisher after they
returned to Texas. Senegal had J.M.W. again in December 2005 when family photographs
were taken. Senegal offered to dress J.M.W. like Fisher's other children, but Fisher said that
J.M.W. was already having his picture taken with Senegal's daughter, so there was no need
to photograph J.M.W. with Fisher's other children. Senegal understood this to mean that
Fisher was including J.M.W. in Senegal's family and excluding him from Fisher's. In
August 2006, Fisher signed a document that stated that she was giving Senegal "consent to
make any and all decisions concerning [J.M.W.'s] care." In the document, Fisher referred
to Senegal as the child's "godmother and caregiver." Senegal claimed they had arranged for
Senegal to be the child's primary caregiver. Senegal enrolled the child in daycare. The 
registration is dated August 27, 2007. Except for a month or two paid by Fisher, Senegal
paid for the child to attend daycare. Fisher's other children had insurance through her
employer, but Fisher did not enroll J.M.W. Senegal claimed Fisher told her all the children
except J.M.W. had insurance. Senegal testified that she would decide when J.M.W. needed
to go to the doctor, although Fisher had to take him. Senegal paid the child's medical bills. 
J.M.W. was hospitalized in March 2007. Fisher and Senegal's mother stayed with J.M.W.
while Senegal was at work. J.M.W. went home with Fisher on his release from the hospital. 
According to Senegal, Fisher did not fill the child's medication and failed to take the child
to his follow-up appointment. J.M.W. stayed with Fisher for five days, then Fisher returned
the child to Senegal. Senegal claimed that Fisher had no contact with the child for four more
months. The two women were working together and Fisher developed "problems at work"
that she thought somehow involved Senegal. Accompanied by police officers, Fisher picked
up the child from Senegal on August 10, 2007. Fisher kept J.M.W. for a week, then returned
him to Senegal. On August 27, 2007, Fisher once again took back J.M.W.

 The trial court questioned Fisher during the temporary hearing. Fisher agreed that
J.M.W. was enrolled in the daycare in August 2006. Fisher claimed that from August 2006
through December 2006, the child stayed with Senegal during the week and Fisher picked
up the child on weekends. Fisher testified she had J.M.W. for more than five days after he
was released from the hospital. She also denied that she failed to contact J.M.W. until
August 10. Fisher also claimed she reimbursed Senegal for the daycare expenses. According
to Fisher, at the time of the hearing, the father of her youngest child was keeping that child
but she would see him on a daily basis. On the morning of the hearing, Fisher picked up
J.M.W. and his sister at Fisher's mother's home and took them to school. Five days a week,
the children were with Fisher for one-and-one-half hours of the day. The trial court included
a finding of jurisdiction in its temporary orders.

 During the trial, Senegal testified that she and Fisher decided J.M.W. would live with
Senegal and the child lived with her for two years, Senegal enrolled the child in daycare and
paid for the service, and the child attended the daycare from August 2006 through June 2007. 
Fisher claimed that the child's absences in the school year that started August 27, 2007, were
due to Senegal failing to take the child to school, and Fisher admitted that Senegal was
keeping J.M.W. at that time.

 During the hearing on the motion for new trial, Fisher's counsel referred the trial court
to an affidavit from Fisher's mother. The affidavit states that the child has never stayed away
from home or out of contact with Fisher for any long period of time. The affidavit also states
that the child accompanied Fisher and Fisher's other children on trips to Houston on two
occasions in 2007. The affiant states that the child sometimes spent the night with Senegal
at Senegal's request, but the child never stayed away from his mother continuously for six
months.

 The motion for new trial also contains an affidavit from Fisher. In this affidavit,
Fisher states that the child was in the hospital from March 30, 2007, until April 5, 2007, and
that upon his release he came to Fisher's home and bonded with his siblings and
grandparents. The affidavit states that J.M.W. remained with Fisher for the rest of 2007.

 A determination of standing pursuant to Section 102.003(a)(9) does not require a
"mechanistic" application. Jones v. Fowler, 969 S.W.2d 429, 433 (Tex. 1998). To establish
standing to file an original suit, the six-month period of actual care, control, and possession
must have ended within ninety days of commencement of the suit. Id. at 432-33. "In
computing the time necessary for standing under [Family Code Section 102.003(a)(9)], the
court may not require that the time be continuous and uninterrupted but shall consider the
child's principal residence during the relevant time preceding the date of commencement of
the suit." Tex. Fam. Code Ann. § 102.003(b).

 Standing is a question of law that we review de novo. See In re Smith, 262 S.W.3d
463, 465 (Tex. App.--Beaumont 2008, orig. proceeding [mand. denied]). The factual
findings made by the trial court are reviewable for legal and factual sufficiency. See
generally In the Interest of M.P.B., 257 S.W.3d 804, 808 (Tex. App.--Dallas 2008, no pet.). 
In determining the principal residence of the child for a six-month period of time ending in
the ninety-day period immediately preceding the commencement of suit, courts consider: (1)
whether the child has a fixed place of abode in the possession of the petitioner; (2) that is
occupied or intended to be occupied by the child consistently over a substantial period of
time; and (3) which is permanent rather than temporary. Id. at 809; In the Interest of S.D. &
K.D., 980 S.W.2d 758, 760 (Tex. App.--San Antonio 1998, pet. denied).

 Fisher argues that the affidavits attached to her motion for new trial must be taken as
true because they were not controverted by Senegal. She relies on a case in which a party
affected by a default judgment established that the party's failure to answer was neither
intentional nor the result of conscious indifference. See Healy v. Wick Bldg. Sys., Inc., 560
S.W.2d 713, 721 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.) (op. on reh'g). This is not
a default judgment in which the party failed to answer but explained the default through
uncontroverted evidence in the motion for new trial. Here, the motion for new trial
concerned the merits of the case, and the evidence from the pre-trial hearing and the trial
controverted the evidence offered in the motion for new trial.

 The trial court heard testimony and considered disputed evidence regarding the extent
and length of time that Senegal possessed J.M.W. From the record as a whole, the trial court
could find that the child maintained a fixed place of abode with Senegal from August 2006
until August 2007, that the child occupied Senegal's residence consistently over that period
of time, and that the living arrangement was permanent rather than temporary. Although the
evidence was disputed, the trial court could resolve the credibility issues in favor of Senegal
and against Fisher and Fisher's mother. Thus, the trial court could in its discretion rule that
the child maintained its principal residence with Senegal for six consecutive months that
ended within ninety days of the date on which Senegal filed her petition (September 14,
2007). We overrule issues twelve through fourteen.

 Issues fifteen and sixteen complain that the trial court erred in entering orders that
separate J.M.W. from his siblings. Issue fifteen contends the trial court abused its discretion
by awarding the right to establish J.M.W.'s primary residence to Senegal and thereby
splitting J.M.W. from his siblings. Issue sixteen contends the trial court abused its discretion
by not deviating from the standard possession order to provide more time with J.M.W.'s
siblings.

 During the hearing on the motion to enter judgment, the only complaint raised by
Fisher regarding the standard possession order concerned the failure to give J.M.W.'s father
visitation on Father's Day. Although the policy argument against dividing custody of
siblings was mentioned in the motion for new trial, it was not mentioned during the hearing
on the motion for new trial. In the motion for new trial, Fisher bases her argument on Family
Code Section 153.251(c). See Tex. Fam. Code Ann. § 153.251(c) ("It is preferable for all
children in a family to be together during periods of possession."). There was evidence that
two of Fisher's other children did not reside with her. The evidence was that two of the
children did live with her. There was no evidence that any of these children were subject to
a possession order that would have that child residing with the child's other parent during
Fisher's period of possession with J.M.W. Accordingly, the trial court did not abuse its
discretion by failing to adjust the standard possession order to accommodate a pre-existing
order.

 Although she did not raise the issue during the hearing on her motion for new trial,
Fisher's motion for new trial also argues that custody of siblings of a marriage should not be
divided except for clear and compelling reasons. See, e.g., Zuniga v. Zuniga, 664 S.W.2d
810, 812 (Tex. App.--Corpus Christi 1984, no writ). Keeping siblings in the same household
is a factor the trial court considers in determining the best interest of the child. Gardner, 229
S.W.3d at 754. In this case, however, the trial court heard evidence that J.M.W. was not
living with Fisher's other children. Furthermore, none of the other children shared the same
father as J.M.W. The policy of keeping the children of a marriage together does not apply
to half-siblings. In the Interest of K.L.R., 162 S.W.3d 291, 306 (Tex. App.--Tyler 2005, no
pet.); In the Interest of Hidalgo, 938 S.W.2d 492, 497-98 (Tex. App.--Texarkana 1996, no
writ).

 Although the evidence is disputed, there is evidence in the record from which the trial
court could find that Fisher voluntarily separated J.M.W.'s primary residence from that of
her other children for at least one year. The public policy encouraging keeping siblings
together is not offended by the separation of siblings when the parents voluntarily separate
their children for a substantial period of time, permit a child to form familial relationships
with nonparents and their children, and fail to support the child. R_ S_ & J_ S_ v. B_ J_ J_
& B_ C_ J_, 883 S.W.2d 711, 720 (Tex. App.--Dallas 1994, no writ). In this case, J.M.W.
did form relationships with his half-siblings, particularly his half-sister, but the evidence does
not show that J.M.W. would be living with his half-sister if Fisher obtained the right to
establish J.M.W.'s primary residence. Under the record in this case, we cannot say that the
trial court abused its discretion either by allowing Senegal to determine J.M.W.'s primary
residence or by entering a standard possession order. We overrule issues fifteen and sixteen.

 In her seventeenth and eighteenth issues, Fisher complains about Senegal's pleadings. 
Issue seventeen complains that Senegal's pleadings do not allege that naming Fisher as the
joint managing conservator with the right to designate the child's primary residence would
significantly impair the child's physical health or emotional development. Issue eighteen
contends that Senegal's failure to plead that Fisher would significantly impair J.M.W.'s
physical health or emotional development deprived Fisher of fair notice of the grounds for
Senegal's petition. Fisher did not file special exceptions.

 A pleading that sets forth a claim for relief must contain "a short statement of the
cause of action sufficient to give fair notice of the claim involved[.]" Tex. R. Civ. P. 47(a). 
In the absence of special exceptions, the petition is construed liberally in favor of the pleader. 
Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993). We uphold a petition as to a cause of
action if it can be reasonably inferred from what is specifically stated, even if an element of
the cause of action is not specifically alleged. Id. "[C]ourts assess the sufficiency of
pleadings by determining whether an opposing party can ascertain from the pleading the
nature, basic issues, and the type of evidence that might be relevant to the controversy." Low
v. Henry, 221 S.W.3d 609, 612 (Tex. 2007). Particularly in child custody suits, the trial court
possesses broad, equitable powers to determine what is in the best interest of the child. See
Leithold v. Plass, 413 S.W.2d 698, 701 (Tex. 1967) ("[A] suit properly invoking the
jurisdiction of a court with respect to custody and control of a minor child vests that court
with decretal powers in all relevant custody, control, possession and visitation matters
involving the child."); Peck v. Peck, 172 S.W.3d 26, 35 (Tex. App.--Dallas 2005, pet. denied)
("[T]he trial court has discretion to place conditions on parents' visitation even if the
pleadings do not request such conditions.").

 Senegal's petition alleges that it would not be in the best interest of the child to
appoint the child's parents as joint managing conservators and that it would be in the best
interest of the child to appoint Senegal as the child's sole managing conservator. An
affidavit attached to the petition claims that Fisher periodically visited the child for short
periods of time and that the child considers Senegal's home to be his residence. The same
affidavit describes specific facts that the affiant claims demonstrate why Fisher's home
would not be a proper environment for the child. The affiant goes on to say "[t]he only
chance [J.M.W.] has of having a normal, healthy and wholesome life is if he remains under
my care and custody." The original petition filed in this suit adequately warned Fisher that
Senegal was seeking custody of J.M.W., and also adequately warned Fisher both why the
petitioner was seeking custody and identified the reason why the trial court should grant
relief. We overrule issues seventeen and eighteen.

 Issue nineteen contends the judgment must be reversed because the trial court's
findings of fact and conclusions of law were made by a preponderance of the evidence
standard rather than a heightened standard of proof subject to heightened appellate scrutiny. 
Fisher argues that the Family Code provides that the trial court's findings are based on a
preponderance of the evidence and the trial court did not identify a higher standard in its
findings of fact and conclusions of law, and the trial court therefore failed to apply the
heightened standard required by Troxel. Compare Troxel, 530 U.S. at 69-70 ("The problem
here is not that the [trial court] intervened, but that when it did so, it gave no special weight
at all to [the mother's] determination of her daughters' best interests. . . . And, if a fit
parent's decision of the kind at issue here becomes subject to judicial review, the court must
accord at least some special weight to the parent's own determination."), with Tex. Fam.
Code Ann. § 105.005 (Vernon 2008) ("Except as otherwise provided by this title, the
court's findings shall be based on a preponderance of the evidence.").

 In 1990, the Texas Supreme Court held that "the nonparent must affirmatively prove
by a preponderance of the evidence that appointment of the parent as managing conservator
would significantly impair the child, either physically or emotionally." Lewelling v.
Lewelling, 796 S.W.2d 164, 167 (Tex. 1990). Although Lewelling predates both the
recodification of Chapter 14 of the Family Code and Troxel, in 2007 the Texas Supreme
Court again recognized that "the quantum of proof required to support a termination decision
differs from the level necessary to support a conservatorship appointment." In the Interest
of J.A.J., 243 S.W.3d 611, 616 (Tex. 2007). J.A.J. was a termination case in which the
intermediate appellate court reversed the judgment as to both the termination of the mother's
rights and as to the appointment of the Department as sole managing conservator. Id. at 612. 
The Supreme Court held that the reversal of the termination judgment did not affect the
conservatorship appointment absent assigned error. Id. at 613. In its analysis, the Supreme
Court recognized the distinction between termination and conservatorship proceedings. Id.
at 616. 

 Due process compels this heightened standard because terminating the
parent-child relationship imposes permanent, irrevocable consequences. On
the other hand, a finding that appointment of a parent as managing
conservator would significantly impair the child's physical health or
emotional development is governed by a preponderance-of-the-evidence
standard. These differing proof standards, in turn, affect the method of
appellate review, which is more stringent for termination decisions than for
those regarding conservatorship. Id. (citations omitted).


Thus, it appears the preponderance of the evidence standard applies to conservatorship
proceedings. See Tex. Fam. Code Ann. § 105.005. Accordingly, the trial court did not err
in failing to identify a higher standard in its findings of fact and conclusions of law. We
overrule issue nineteen and affirm the judgment.

 AFFIRMED.




 _____________________________

 STEVE McKEITHEN

 Chief Justice 




Submitted on September 29, 2009

Opinion Delivered March 11, 2010


Before McKeithen, C.J., Kreger and Horton, JJ.
1. We find no indication in the record that Fisher claimed indigence before trial.
Retained counsel filed the motion for new trial.