Denyie Lynn GARDNER, Appellant,

v.

Charles Matthew GARDNER, Appellee.

No. 04–06–00218–CV.

Court of Appeals of Texas, San Antonio.

May 9, 2007.

Jeff Small, Law Office of Jeff Small, Kathy M. Orr, Law Office of Kathy M. Orr, P.L.L.C., Misty D. Tiller, San Antonio, for appellant.

David K. Foster, Law Office of David K. Foster, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

Denyie Lynn Gardner appeals from a divorce decree that was based in large part on a mediated settlement agreement. The mediated settlement agreement resolved issues of conservatorship of all three children, primary possession of one child, and most marital property issues. Only the issue of primary possession of two children and two discrete marital property issues were tried to the court. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

After approximately eight years of marriage, Charles Matthew Gardner ("Matt") filed a divorce petition. Denyie Lynn Gardner ("Lynn") filed a counter petition. Each party sought custody of three children: A.M.G., C.G., and C.M.G.[1] Lynn is the natural mother of all three children. Matt is the natural father of C.M.G. and he formally adopted A.M.G. in 1996. Matt is not C.G.'s father, natural or by adoption, although his name appears on C.G.'s birth certificate as the father. Before trial, the parties engaged in mediation and reached a settlement on numerous issues including joint managing conservatorship of all three children, right to establish primary residency of A.M.G., most property issues, and visitation terms. The parties tried the following unresolved issues to the court: (1) right to establish the primary residence of C.G. and C.M.G.; (2) responsibility for the cell phone bill; and (3) allocation of an income tax refund.

After trial, the court named Lynn and Matt joint managing conservators of all three children in accordance with the mediated settlement agreement, but gave Matt the right to establish C.G.'s and C.M.G.'s primary residence. The court ordered Lynn to pay the cell phone bill and awarded seventy-five percent of the income tax refund to Matt and twenty-five percent to Lynn. While the parties were drafting the final decree, a dispute arose regarding the terms of extended summer possession. After a hearing, the trial court altered the terms of the previous settlement agreement with regard to extended summer possession. Following entry of the final decree of divorce, Lynn requested findings of fact and conclusions of law, which the trial court entered. Thereafter, Lynn perfected this appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

Lynn raises four issues on appeal: (1) the evidence is legally and factually insufficient "to rebut the statutory presumption preferring a parent as managing conservator for C.G." and thus justify granting Matt the exclusive right to determine C.G.'s residence; (2) the trial court abused its discretion by separating the children

1. Two of the children have identical initials. Accordingly, we shall refer to the older child by his first and last initials and refer to the younger child by his first, middle, and last initials.

without a "clear and compelling reason;" (3) the trial court erred in altering the terms of extended summer possession agreed to during mediation; and (4) the unequal allocation of the cell phone bill and income tax refund was not a just and right division of the estate.

■ We review the trial court's rulings on these issues for abuse of discretion. *Grayson v. Grayson*, 103 S.W.3d 559, 561 (Tex.App.-San Antonio 2003, no pet.). A trial court abuses its discretion if it acts without reference to guiding rules or principles (legal issues), or acts arbitrarily or unreasonably (factual issues). *See id.; Naguib v. Naguib*, 137 S.W.3d 367, 371 (Tex.App.-Dallas 2004, pet. denied). Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion. *London v. London*, 192 S.W.3d 6, 14 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *see Grayson*, 103 S.W.3d at 561. When an appellant challenges the legal and factual sufficiency of the evidence in cases where the proper standard is abuse of discretion, we engage in a two-prong analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex.App.-El Paso 2005, no pet.). In determining whether the trial court had sufficient information, we use the traditional standards of review for legal and factual sufficiency. *See Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002) (setting forth standard of review for legal sufficiency); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (setting forth standard of review for factual sufficiency).

## APPOINTMENT OF NON–PARENT AS CONSERVATOR WITH EXCLUSIVE RIGHT TO DETERMINE RESIDENCE

■ In her first issue, Lynn contends the trial court abused its discretion in naming Matt, a non-parent, as joint managing conservator with the exclusive right to determine C.G.'s residence. She argues the evidence is legally and factually insufficient to overcome the presumption in section 153.131 of the Texas Family Code in favor of granting custody of a child to a parent. Lynn's entire argument is based on her belief that section 153.131 controls the disposition of this case. We disagree.

After mediation, the only issue relating to conservatorship to be tried was the right to establish the primary residence of C.G. and C.M.G. Before the parties began presenting evidence, the trial court stated: "I've read the mediated settlement agreement. I understand the only issue reserved is who has the right to determine residence and domicile." Lynn's attorney did not disagree and simply remarked that Lynn was disputing Matt's right to determine C.G.'s primary residence based on the presumption in section 153.131 of the Family Code.

Section 153.131 of the Texas Family Code states:

(a) Subject to the prohibition in Section 153.004, unless the court finds that the appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

(b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the

best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

TEX. FAM.CODE ANN. § 153.131 (Vernon 2002). Thus, if a non-parent and a parent both seek managing conservatorship of a child, a court may not appoint the non-parent as managing conservator unless the non-parent submits sufficient proof that the appointment of the parent would not be in the best interest of the child, i.e., the parent's appointment would significantly impair the child's physical health or emotional development. *Id.; see, e.g., In re Rodriguez*, 940 S.W.2d 265, 271–72 (Tex. App.-San Antonio 1997, writ denied); *but see In re De La Pena*, 999 S.W.2d 521, 534–35 (Tex.App.-El Paso 1999, no pet.) (holding presumption applies equally when non-parent and parent are appointed joint managing conservators but non-parent is given primary possession, i.e., right to determine residence). In this case, the parties **agreed** to joint managing conservatorship of all the children, including C.G. The only "custody" issue before the court was which joint managing conservator was going to be awarded the right to determine the primary residence of C.G. and C.M.G. Thus, the presumption in section 153.131 does not apply.

▮▮▮ We recognize the El Paso Court of Appeals has held the section 153.131 presumption applies not only to determinations of conservatorship between a parent and a non-parent but also to determinations of which of two joint managing conservators, parent or non-parent, will be given primary possession, i.e., the right to determine the child's primary residence. *De La Pena*, 999 S.W.2d at 534–35. Courts are to interpret statutes in accordance with their plain meaning unless such an interpretation would lead to an absurd result. *Texas Dept. of Protective and Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex.2004). Section 153.131 clearly states the presumption applies only to determinations of conservatorship. *See* TEX. FAM.CODE ANN. § 153.131 (Vernon 2002). Because the plain words of the statute do not address or contemplate application of the presumption to the issue of primary possession, we would have to rewrite the statute in order to reach the result in *De La Pena*. *See In re J.P.*, 136 S.W.3d 629, 630–31 (Tex.2004) (refusing to rewrite portion of Juvenile Justice Code to engraft requirement that trial court make certain findings). Applying the statute as written does not lead to an absurd result nor does it violate Texas policy that the best interest of the child is paramount regarding issues of conservatorship and possession. *See* TEX. FAM.CODE ANN. § 153.002 (Vernon 2002). Lynn and other similarly situated parties can still challenge primary possession based on best interest of the child. *Id.* Accordingly, we decline to adopt the interpretation of section 153.131 suggested by Lynn and followed by the court in *De La Pena*.[2]

▮▮▮ In the interest of justice, we will construe Lynn's argument to include a complaint that the trial court abused its discretion by awarding Matt the exclusive right to determine C.G.'s primary resi-

---

2. Lynn also complains the trial court's findings of fact are "defective" because they are conclusory and do not satisfy "the exacting standard necessary to rebut the parental presumption." Because we reject Lynn's argument that the presumption applies, we need not address this issue. Moreover, Lynn failed to preserve the complaint for appellate review because, after the trial court made its findings of fact and conclusions of law, Lynn did not file a request for additional or amended findings or otherwise point out to the trial court that its findings were insufficient. *See McDuffie v. Blassingame*, 883 S.W.2d 329, 337 (Tex.App.-Amarillo 1994, writ denied).

dence. In a joint managing conservatorship, the trial court must designate which managing conservator will have the exclusive right to designate the child's primary residence. TEX. FAM.CODE ANN. § 153.134(b)(1) (Vernon Supp.2006). In making this determination, the trial court considers the best interest of the child. *See* TEX. FAM.CODE ANN. § 153.002 (Vernon 2002); *Albrecht v. Albrecht,* 974 S.W.2d 262, 265 (Tex.App.-San Antonio 1998, no pet.).

■ Evidence was presented at trial expounding the limitations and virtues of both Matt and Lynn, including their parenting skills, attentiveness to the children's needs, lifestyle choices, habits involving alcohol, and sexual practices. There was also significant evidence regarding Lynn's actions involving allegations that Matt may have inappropriately touched A.M.G. The court heard evidence that Matt touched A.M.G.'s stomach under her shirt and once "swatted her butt." The court also heard evidence that Lynn made reports to Child Protective Services and the Guadalupe Sheriff's Department claiming Matt attempted to sexually abuse A.M.G.[3] Lynn even sought a protective order and criminal prosecution of Matt. After an investigation, Child Protective Services closed its case stating the matter was "ruled out with no significant risk factors." The request for the protective order was denied and as of the time of trial, the District Attorney's office had taken no action on the criminal complaint. The court received evidence suggesting there was such estrangement between Matt and A.M.G. and such hostility by A.M.G. toward Matt that it was currently impracticable, if not impossible, for Matt to have either custody or possession of A.M.G.—even in the absence of any agreement giving Lynn primary possession.

Each party produced witnesses disputing much of the other party's negative evidence. There was also testimony that Matt had made dramatic changes in his life since the parties' separation. Witnesses testified Matt was a good father, was loving and affectionate with C.G. and C.M.G., and limited discipline to talking to the boys and sending them to their rooms. There was evidence Matt now attends church regularly, does not allow alcohol in the house, and provides a stable environment for the boys. He ensures the boys are bathed, fed, clothed, their homework is done, and that they are ready for school every day. He participates in Cub Scouts with C.G. and C.M.G., plays games with them, and participates with them in other activities.

The trial court, as fact finder in this case, is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[4] *See City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex.2005). After reviewing the record, we conclude the trial court had sufficient information to exercise its discretion and did not abuse that discretion in finding it was in C.G.'s best interest for Matt to be designated the conservator with the exclusive right to determine C.G.'s primary residence. *See So-*

---

**3.** At trial, Lynn testified A.M.G. told her "Matt had pulled her down on his lap and was touching her, made her uncomfortable, and that his hand had been on her tummy, under her shirt." Reports from Child Protective Services indicate Lynn told the agency that A.M.G. told her Matt "started to rub her tummy under her shirt ... that his hand moved up towards her chest ... she pushed Matt's hands away." At trial, several witnesses, including A.M.G.'s counselor, indicated that Lynn described Matt's actions as attempted sexual abuse.

**4.** In its findings of fact, the trial court specifically found Lynn "has a history of lying in and out of Court."

*telo*, 170 S.W.3d at 787 (using two-pronged inquiry for sufficiency challenges when abuse of discretion standard applies); *see also In re Gonzalez*, 993 S.W.2d 147, 155 (Tex.App.-San Antonio 1999, no pet.) (holding abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support trial court's decision).

### SEPARATION OF CHILDREN

■ In her second issue, Lynn argues the trial court abused its discretion in separating A.M.G. from C.G. and C.M.G. because there was no "clear and compelling" reason to do so. We disagree both with Lynn's statement of the burden of proof and with her conclusion.[5]

■ Relying on opinions that state children of the same marriage should remain together during periods of possession absent "clear and compelling reasons," Lynn argues the evidence did not meet that standard. *See, e.g., Coleman v. Coleman*, 109 S.W.3d 108, 111–12 (Tex.App.-Austin 2003, no pet.); *De La Pena*, 999 S.W.2d at 535; *Pizzitola v. Pizzitola*, 748 S.W.2d 568, 569 (Tex.App.-Houston [1st Dist.] 1988, no writ). Section 153.251 of the Texas Family Code, titled "Policy and General Application of Guidelines," states a general preference, based on public policy, that "all children in a family ... be together during periods of possession." Tex. Fam.Code Ann. § 153.251(c) (Vernon 2002). However, the Code contains no requirement that a party show or a trial court find "clear and compelling reasons"

for separating children during periods of possession. Rather, the trial court's primary consideration in deciding the issue of possession is the best interest of the child. *Id.* § 153.002 (Vernon 2002). The policy favoring keeping children together during periods of possession is simply a factor the trial court considers in deciding what is in the child's best interest. *See id.* § 153.251(c); *In re K.L.R.*, 162 S.W.3d 291, 306 (Tex.App.-Tyler 2005, no pet.); *MacDonald v. MacDonald*, 821 S.W.2d 458, 463 (Tex.App.-Houston [14th Dist.] 1992, no writ). We decline to impose a higher burden than that required by the Family Code. *MacDonald*, 821 S.W.2d at 463 (holding burden on party seeking to be named sole managing conservator of one child is to show by preponderance of evidence that it is in child's best interest; and Family Code does not require party to show clear and compelling reasons for separating children). We thus review for abuse of discretion the trial court's findings that it is in the best interest of the children for Matt to have primary possession of C.M.G. and C.G. notwithstanding the parties' agreement that A.M.G. will live with Lynn.

■ Based upon the evidence recited in our review of issue one, we hold there was legally and factually sufficient evidence to establish that it is in the best interests of the children to award Matt the right to determine C.G.'s and C.M.G.'s primary residence. Accordingly, the trial court did not abuse its discretion in separating the children.

---

5. We note that Lynn has effectively consented to the separation of the children in this case. While attacking the trial court's decision to grant Matt the right to determine the primary residence of C.G., she does not similarly attack the same outcome concerning C.M.G. As discussed below, the trial court must consider the separation issue in making its determination of the "best interest of the child." Lynn does not assert or complain that the trial judge abused his discretion in granting Matt the right to determine the primary residence of C.M.G. By assenting to the trial court's judgment in this regard concerning C.M.G., and given her agreement that A.M.G. will reside with her, Lynn has essentially "waived" her right to complain about the separation of the children.

## ALTERATION OF TERMS OF MEDIATED SETTLEMENT AGREEMENT

■ Lynn next argues the trial court abused its discretion by altering the terms of extended summer possession agreed to in the mediated settlement agreement. We agree.

Given the trial court's determination of primary possession of C.G. and C.M.G., the parties' mediated settlement agreement provided that Matt would have forty-two days' extended summer possession of A.M.G. and Lynn would have the same with regard to C.G. and C.M.G. The other summer terms, including weekend visits, were to be governed by the guidelines in the Texas Family Code for parties who reside more than one hundred miles apart. At the conclusion of the trial, the trial court expressly approved the mediated settlement agreement and adopted it "as the order of the court effective immediately." After trial but before the decree was signed, Matt filed a motion to modify alleging the mediated settlement agreement as it relates to summer possession is "unworkable, inappropriate, and not in the best interest of the children" because there were not eighty-four days available in the summer. After a hearing, the trial court ruled summer possession would be equally split, with each party having the right to one weekend visitation during the other party's summer possession period.[6] The final decree incorporated this ruling.

At the hearing on the motion to modify, Matt presented evidence regarding a new physical abuse charge leveled by Lynn, Lynn's removal of the boys from school early on several occasions, Lynn's failure to institute reunification counseling for Matt and A.M.G., and Lynn's violation of the settlement agreement with regard to summer possession. Lynn presented evidence explaining or attempting to negate Matt's evidence.

Section 156.101 of the Texas Family Code states, in pertinent part:

The court may modify an order that provides for the ... possession of or access to a child if the modification would be in the best interest of the child and:

(1) the circumstances of. the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:

(A) the date of the rendition of the order; or

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based.

TEX. FAM.CODE ANN. § 156.101 (Vernon Supp.2006). Thus, to support his request for the modification of the previously agreed terms of summer possession, it was encumbent upon Matt to prove that since December 13, 2004, the date of the mediated settlement agreement, circumstances had materially and substantially changed and the modification was in the best inter-

---

**6.** This modification by the trial court could significantly impact the parties' mediated settlement agreement. It could reduce the primary possessor's right to two weekend visits during the non-primary possessor's extended summer possession if such possession lasted more than thirty (30) days. *See* TEX. FAM.CODE ANN. § 153.313(4) (Vernon 2002). Additionally, it equalized summer possession of each child thereby potentially depriving the pri-

mary possessor of his or her right to possession of the child or children of which they have primary custody. More specifically, if C.G.'s and C.M.G.'s summer vacation is longer than eighty-four days, Matt is entitled to primary possession of them for all but forty-two days pursuant to the mediated settlement agreement. The same is true with regard to Lynn's possession of A.M.G.

est of the children. *See id.* Matt failed to carry his burden.

None of the evidence presented by Matt establishes a material and substantial change since the signing of the mediated settlement agreement with regard to summer possession. Accordingly, we sustain Lynn's third issue and order the trial court to modify paragraph six of its judgment in accordance with the summer possession terms of the parties' mediated settlement agreement.

### DIVISION OF PORTION OF MARITAL ESTATE

■ In her final issue Lynn contends the trial court abused its discretion by making Lynn responsible for paying the entire cell phone bill and by awarding seventy-five percent of the tax refund to Matt. Besides complaining that the trial court's findings of fact were insufficient,[7] Lynn's entire argument on this issue is as follows:

> Further, the trial court abused its discretion in making a disproportionate award of the marital estate because none of the factors justifying such an award are present here. Accordingly, the trial court's judgment on the tax refund and the Sprint bill should be reversed and the parties should be ordered to share those equally.

Lynn includes no citation of authority and no actual argument—she merely provides a conclusion that none of the factors, without even identifying those factors, supports the trial court's decision. By failing to present proper argument, citation of authority, or even a jurisprudential framework for evaluating her contention, the issue is inadequately briefed and therefore waived. *See* TEX.R.APP. P 38.1(h); *Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 725 (Tex.App.-Dallas 2004, no

pet.); *Santillan v. Nat'l Union Fire Ins. Co.,* 166 S.W.3d 823, 824 (Tex.App.-El Paso 2005, no pet.).

■ Nevertheless, we hold the trial court did not abuse its discretion. The trial court has wide latitude to divide the marital estate in a manner the court deems "just and right." *Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex.1996); *see* TEX. FAM.CODE ANN. § 7.001 (Vernon 2006); *Grayson,* 103 S.W.3d at 562. In exercising this discretion, the court is not required to apportion the community property equally. *Murff v. Murff,* 615 S.W.2d 696, 698–99 (Tex.1981); *Grayson,* 103 S.W.3d at 562. The evidence established that the cell phone bill was for Lynn's phone and that Lynn was not living with Matt when $400.00 of the charges were incurred. With respect to allocation of the tax refund, the trial court easily could have decided to award a greater portion to Matt because he had assumed responsibility for a greater amount of debt in the mediated settlement agreement. Because the record does not establish the division of property was so disproportionate that it was manifestly unjust and unfair, the trial court did not abuse its discretion in dividing the property. *See Trial v. Trial,* No. 04–05–00448–CV, 2006 WL 1993772, *1 (Tex.App.-San Antonio July 19, 2006, no pet.) (mem.op.) (citing *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21, 23 (Tex.1923)).

### CONCLUSION

We hold the trial court erred in modifying the terms of the mediated settlement agreement with regard to extended summer possession. We reverse that part of the decree and order the trial court to modify paragraph six of the decree to accurately reflect summer possession in accordance with the parties' mediated settle-

---

7. *See* note 1, *supra.*

ment agreement. In all other respects the judgment of the trial court is affirmed.

CATHERINE STONE, Justice (concurs without opinion).