

## MEMORANDUM OPINION

No. 04-09-00787-CV

**IN THE INTEREST OF I.J.A.**, P.J.A., and J.J.A., Children,

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2008-PA-02405
Honorable Charles Montemayor, Associate Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice
              Marialyn Barnard, Justice

Delivered and Filed: June 16, 2010

AFFIRMED

       This is an accelerated appeal from the trial court's order terminating Roxanne Casillas's parental rights to her children, I.J.A., P.J.A., and J.J.A.[2] In three issues, Casillas argues termination was improper because the evidence is legally and factually insufficient to support the three statutory grounds upon which the trial court based the termination. We affirm the trial court's judgment.

---

[1] The Honorable John D. Gabriel is the presiding judge of the 131st Judicial District Court of Bexar County. However, the order of termination, which is the subject of the appeal, was signed by The Honorable Charles Montemayor, Associate Judge.

[2] The trial court also terminated the parent-child relationship between the two fathers and their respective child or children. Neither father has appealed the termination.

## PROCEDURAL BACKGROUND

Following a bench trial, the trial court terminated the parent-child relationship between

Casillas and her children, finding the evidence supported three of the sixteen statutory grounds for

termination alleged by the Texas Department of Family and Protective Services ("the Department"),

and that termination was in the best interest of the children.  *See* TEX. FAM. CODE ANN.

§ 161.001(1), (2) (Vernon 2009).  Specifically, the trial court found Casillas:

> (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered their physical or emotional well-being;
>
> (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and
>
> (3) failed to comply with provisions of a court order that established the actions necessary to obtain return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of their removal because of abuse or neglect.

*See id.* § 161.001(1)(D), (E), (O).  Casillas timely filed an affidavit of indigence, a motion for new

trial, and a statement of appellate points.  *See id*. § 263.405 (b), (e).  After a hearing, the trial court

found Casillas indigent, denied her motion for new trial, and found her statement of appellate points

frivolous.  *See id.* § 263.405(d).  Casillas perfected an appeal.

## ANALYSIS

Casillas's appellate issues are subject to section 263.405(g) of the Texas Family Code

because the trial court found her appeal frivolous.  *See id.* § 263.405(g).  Accordingly, we must first

review the trial court's frivolousness finding before proceeding to the merits of the appeal.[3]

---

[3] We construe Casillas's briefing to include a challenge to the trial court's finding that her appeal is frivolous. *See In re K.L.A.C.*, No. 14-08-00960-CV, 2010 WL 184152, at *2 n.5 (Tex. App.—Houston [14th Dist.] Jan. 21, 2010, no pet.).

***Standard of Review***

Parental rights can be terminated only upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(1), (2); *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). If a trial court determines the parent has committed multiple acts prohibited by section 161.001(1) of the Family Code, the reviewing court need not determine whether each ground enjoys the requisite amount of evidentiary support. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re N.S.G.*, 235 S.W.3d 358, 363 (Tex. App.—Texarkana 2007, no pet.). Rather, the reviewing court may affirm the termination if there is clear and convincing evidence supporting the existence of one alleged statutory violation, assuming the State also proved termination was in the best interest of the child. *Id.*; *see also* TEX. FAM. CODE ANN. § 161.001(1), (2). Clear and convincing evidence is "'proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *J.O.A.*, 283 S.W.3d at 344 (quoting TEX. FAM. CODE ANN. § 101.007 (Vernon 2008)); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). When a parent appeals from an order terminating his or her parental rights, and that termination was pursuant to chapter 263, subchapter E of the Texas Family Code, the trial court is required to determine whether "the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code." TEX. FAM. CODE ANN. § 263.405(d)(3); *see In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.). When an appeal has no arguable basis in either law or fact, it is frivolous. *M.N.V.*, 216 S.W.3d at 834 (citing *De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex. App.—San Antonio 1998, no pet.)). Section 13.003(b) of the Texas Civil Practice and Remedies Code provides that in determining whether an appeal is frivolous, the

trial court "may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002); *see M.N.V.*, 216 S.W.3d at 834-35. We review the trial court's determination that an appeal is frivolous under an abuse of discretion standard. *M.N.V.*, 216 S.W.3d at 834 (citing *In re W.B.W.*, 2 S.W.3d 421, 422 (Tex. App.—San Antonio 1999, no pet.); *In re M.R.J.M.*, 193 S.W.3d 670, 673 (Tex. App.—Fort Worth 2006, no pet.)). "A trial court abuses its discretion if it acts without reference to guiding rules or principles (legal issues), or acts arbitrarily or unreasonably (factual issues)." *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.); *In re M.W.T.*, 12 S.W.3d 598, 602 (Tex. App.—San Antonio 2000, pet. denied). When the proper standard of review is abuse of discretion, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in determining whether the trial court abused its discretion. *Gardner*, 229 S.W.3d at 751; *London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Therefore, an appellate court must engage in a two-prong analysis and determine "(1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in its application of discretion." *Gardner*, 229 S.W.3d at 751; *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex. App.—El Paso 2005, no pet.).

In undertaking this analysis, the appellate court uses the traditional standards of review for legal and factual sufficiency. *Gardner*, 229 S.W.3d at 751. When the legal sufficiency of the evidence is challenged in a case where the burden of proof is by clear and convincing evidence, the reviewing court is required to look at all of the evidence in the light most favorable to the finding in question to determine "whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. If the court determines no

reasonable fact finder could have formed such a belief, it must conclude the evidence is legally insufficient. *Id.* When the factual sufficiency of the evidence is challenged in a clear and convincing case, the reviewing court must look at all of the evidence, and "[i]f, in the light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

We must therefore determine, considering the standards of review for legal and factual sufficiency in the context of clear and convincing evidence, whether the trial court abused its discretion in finding Casillas's appeal of at least one of the findings under section 161.001(1) frivolous. *See A.V.*, 113 S.W.3d at 362; *N.S.G.*, 235 S.W.3d at 363.

### *Application*

One of the statutory grounds for termination asserted by the Department and found by the trial court was that Casillas engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). When reviewing a finding under section 161.001(1)(E), the focus is on the parent's conduct. *In re N.H.*, 122 S.W.3d 391, 402 (Tex. App.—Texarkana 2003, pet. denied). The relevant inquiry under section 161.001(1)(E) is whether the evidence establishes the endangerment of a child's physical well-being as a direct result of the parent's conduct, which includes acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (citing *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied)). Termination under section 161.001(1)(O) must be based on more than a single act or omission; it

must be based on a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125. However, it is not necessary that the parent's conduct be directed at the child or the child actually suffer injury. *Id.*

Although Casillas had been involved with the Department for several years with regards to allegations of abuse and neglect, the children were never removed until 2008. In 2008, Casillas left the children with her aunt, Virginia Jimenez, because she was incarcerated on an aggravated robbery charge. However, Jimenez soon separated the children, sending each child to a different home. During the separation, I.J.A. was admitted to a mental health unit, and when released, his caretaker refused to take him back. This ultimately came to the attention of the Department, and after an investigation, all of the children were removed and placed in foster care. Casillas contends the evidence is insufficient to show she knowingly placed the children with someone who engaged in conduct that endangered the physical or emotional well-being of her children. More specifically, she argues she had no reason to believe her aunt would do anything other than care for the children.

Nicole Curel, the Department's supervisor in this case, testified there was a long history of Casillas leaving the children with other people. From July 2004 to December 2004, the children were left with Jimenez. However, in January 2005, Jimenez gave the children to Juanita and Albert Gomez. In 2006, I.J.A. returned to Casillas, but the other two children remained with the Gomezes. In 2007, all three children were living with Casillas, but by October 2008, they were once again living with Jimenez. However, Jimenez subsequently sent the children to three different homes. Curel testified the "pattern of children bouncing from place to place" causes problems for children, and caused behavioral problems for Casillas's children. There was also testimony that this constant instability harmed the Casillas children emotionally.

Contributing to the instability suffered by the children, was Casillas's history of incarceration. Admittedly she has been incarcerated on numerous occasions, and her latest incarceration lasted more than a year. Although imprisonment alone is not a basis for termination, it is a factor to consider because when a parent is incarcerated, he or she is absent from the daily life of the child and unable to provide support, which negatively impacts a child's emotional well being. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

Casillas's decision to leave her children for extended periods of time, coupled with her decision to commit criminal acts resulting in numerous incarcerations, certainly subjected the children to uncertainty and instability. In fact, Casillas herself admitted that her criminal behavior negatively affected her children. This type of conduct endangered her children's physical and emotional well-being. *See id.* Leaving a child over and over again, the child never knowing when or if the parent will return, subjects the child to uncertainty and instability, which endangers the child's physical and emotional well-being. *Id.* Accordingly, there is evidence Casillas engaged in a course of conduct that endangered the physical and emotional well-being of her children. *See* TEX. FAM. CODE ANN. § 161.001(1)(E).

Moreover, Casillas simply ignores the evidence from numerous witnesses regarding her direct physical abuse of her children, which would clearly constitute evidence of a course of conduct endangering the children's physical and emotional well-being. Therapists for all three children testified extensively about the severe physical abuse suffered by the children at the hand of their mother. At the relevant times, P.J.A. was seven and eight-years-old. P.J.A.'s therapist testified P.J.A. told her Casillas hit him with a bat. One of P.J.A.'s foster parents, who is actually a relative, testified P.J.A. was terrified of returning to his mother. The foster parent testified P.J.A. was

terrified of wire hangers. When he saw her using one to clean out a stopped-up sink, he crawled into a corner of the kitchen and started screaming, asking her why she was going to hit him. When she questioned him, he told her his mother used to open the wire hanger and hit him with it. He also told her his mother hit him with a baseball bat when he was too loud. P.J.A. also told her Casillas hit I.J.A. with the bat.

J.J.A.'s therapist also testified. J.J.A., who was six and seven-years-old during the relevant time periods, told the therapist she was physically abused, specifically that she was spanked on the buttocks and legs with a belt. She also told the therapist that she witnessed her mother hitting her brothers with a baseball bat. The therapist stated J.J.A. is a "very anxious child," who has been diagnosed with post-traumatic stress disorder, as well as adjustment disorder. J.J.A. suffers from severe and violent nightmares due to the great instability in her life.

The Department also presented testimony from I.J.A.'s therapist. I.J.A., age eight and nine during this time period, told of abuse by his mother and father. He told the therapist he wished his mother would change and stop hitting him. Like J.J.A., I.J.A. has also been diagnosed with post-traumatic stress disorder, as well as bipolar disorder, ADHD, gender identity disorder, expressive receptive language disorder, and low intelligence. According to the therapist, I.J.A. has exhibited self-harming behaviors, aggression, problems in school and with peers, and great difficulty in foster placement.

Mary Duvs, a forensic interviewer for Bexar County, interviewed all three children. All three children described physical abuse. There was physical abuse by "Uncle Steve"–a man their mother

lived with at a certain point in time. All three talked about I.J.A. being physically abused with a bat by Casillas. J.J.A. said she was hit by her mother and Uncle Steve.

Finally, Dr. Richard Blake, a psychologist, evaluated J.J.A. and P.J.A. Both were diagnosed with post-traumatic stress disorder and adjustment disorder with mixed anxiety and depressed mood. He also determined both children had suffered physical abuse and neglect. P.J.A. told Dr. Blake he was hit, thrown against a bedframe, and witnessed his mother hitting I.J.A. with a bat. J.J.A. related that she was hit by her mother, but she did have great difficulty talking about it. In Dr. Blake's opinion, physical abuse resulted in their conditions, causing symptoms of anxiety, agitation, frustration, lack of trust, over reactions, fear, and hyper vigilance.

Thus, in addition to the evidence of damage to the physical and emotional well-being of the children due to Casillas's decision to leave them with others, there was overwhelming evidence of direct physical abuse by Casillas. Casillas does not challenge this evidence in her brief. The evidence of direct physical abuse would be sufficient to support the trial court's finding that Casillas engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E).

When we consider the evidence according to the appropriate standards of review, we conclude the trial court could have formed a firm belief or conviction that Casillas engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being. *See J.F.C.*, 96 S.W.3d at 266. Given that the evidence is legally and factually sufficient to support at least one of the statutory grounds of termination found by the

trial court, as well as Casillas's failure to contest the best interest finding, we hold the trial court did not abuse its discretion in finding Casillas's appeal frivolous. *See M.N.V.*, 216 S.W.3d at 834-35.

## CONCLUSION

Because the trial court did not err in finding Casillas's appeal frivolous, we affirm the trial court's termination order.

Marialyn Barnard, Justice