**Opinion filed November 14, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00140-CV

_____

## IN THE INTEREST OF M.J.C.B., JR. AND M.J.B., CHILDREN

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 48,789**

### MEMORANDUM OPINION

Appellant is the father of the children at issue in this appeal: M.J.C.B., Jr. and M.J.B.[1] The trial court entered an order in which it appointed the children's maternal grandparents as joint managing conservators and the parents as possessory conservators of the children. Appellant filed a notice of appeal; the mother did not. We reverse in part, affirm in part, and remand.

---

[1]We note that another child, N.B.H., was involved in this proceeding at the trial court level. However, Appellant is not the father of N.B.H., and none of the parties below have appealed with respect to the portion of the trial court's order that relates to N.B.H. In this opinion, we use the term "the children" to refer to M.J.C.B., Jr. and M.J.B.

## I. *Issues*

Appellant presents four issues for review. In his first and second issues, Appellant asserts that the evidence is legally and factually insufficient to support the trial court's finding that appointing Appellant as the managing conservator of his son, M.J.C.B., Jr., would not be in the child's best interest. In his third and fourth issues, Appellant makes the same contentions with respect to his daughter, M.J.B. Appellant specifically argues that the evidence failed to show that appointing him to be the children's managing conservator would significantly impair the children's physical health or emotional development.

## II. *Conservatorship*

We review a determination of conservatorship for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Under this standard, legal and factual sufficiency challenges are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *In re A.D.A.*, No. 11-12-00002-CV, 2012 WL 4955270, at *1 (Tex. App.—Eastland Oct. 18, 2012, no pet.) (mem. op.) (citing *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.), and *London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). The best interest of the child is always the primary consideration of the court in determining managing conservatorship. TEX. FAM. CODE ANN. § 153.002 (West 2014).

Although trial courts are afforded broad discretion in deciding family law questions, the legislature has explicitly limited the exercise of that discretion when a nonparent seeks to be appointed as managing conservator. *Lewelling v. Lewelling*, 796 S.W.2d 164, 168 (Tex. 1990). When a court determines conservatorship between a parent and a nonparent, a presumption exists that appointing the parent as the sole managing conservator is in the child's best

interest; this presumption is deeply embedded in Texas law.  FAM. § 153.131; *Lewelling*, 796 S.W.2d at 166.  Section 153.131(a) provides:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

The statutory language in Section 153.131(a) creates a strong presumption in favor of parental custody and imposes a heavy burden on a nonparent.  *Lewelling*, 796 S.W.2d at 167.  Evidence showing that the nonparent would be a better custodian of the child does not suffice, and close calls should be decided in favor of the parent.  *Id.* at 167–68.  The nonparent may rebut the presumption with affirmative proof, by a preponderance of the evidence, that appointing the parent as managing conservator would significantly impair the child, either physically or emotionally.  *Id.* at 167; *see also In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

Usually, the nonparent must present evidence that shows a parent's conduct would have a detrimental effect.  *Gray v. Shook*, 329 S.W.3d 186, 197 (Tex. App.—Corpus Christi 2010), *aff'd in part and rev'd in part*, 381 S.W.3d 540 (Tex. 2012); *see Lewelling*, 796 S.W.2d at 167.  *But see In re Rodriguez*, 940 S.W.2d 265, 267 (Tex. App.—San Antonio 1997, writ denied) (determining that case before it was unique and distinguishable and holding that the *Lewelling* standard— which requires the nonparent to offer evidence of specific actions or omissions of the parent in order to show that awarding custody to the parent would result in physical or emotional harm to the child—did not apply and that the only applicable standard was the standard from Section 153.131(a)).  In *Gray*, the child's father was absent for most of the child's life, and the maternal grandmother claimed that placing the child with her father would cause the child to cry, scream, throw up,

and wet the bed. 329 S.W.3d at 191. Additionally, the grandmother contended that removing the child could cause the child to be more bossy and affect relationships with her peers. *Id.* A social worker testified that the vomiting was "possibly" caused by anxiety and that, in similar situations, "*sometimes* depression develops, *sometimes* they're at risk for drug use." *Id.* at 198. Because the only evidence of possible harm to the child was "the 'uprooting' itself—not any specific, identifiable act or omission, conduct or behavior of [the father]," the court concluded that it was an abuse of discretion for the trial court to name a nonparent as sole managing conservator. *Id.* Furthermore, the court concluded that "[e]vidence of sporadic, past vomiting and the *possibility* of negative effects on peer relationships" did not rise above the mere speculation of harm. *Id.*

In the present case, only four witnesses testified at trial: a caseworker for the Department of Family and Protective Services, a CASA volunteer, the father of the mother's other child, and Appellant. None of these witnesses offered any evidence that would indicate that the children's physical health or emotional development would be significantly impaired if Appellant were appointed their managing conservator.

The Department's conservatorship caseworker, Sharon Mitchell, testified that she had been involved with the children since the initial onset of this case. The children were placed with their maternal grandmother, with whom the children had lived "off and on most all of their life." The children remained with the maternal grandparents while this case was pending in the trial court. The Department did not seek to terminate the parents' rights. Mitchell recommended that the children be transitioned to Appellant's care. In order to avoid trauma to the children, the Department recommended that the transition be monitored by the Department because "the children do not know him." Appellant had been absent from the children's lives for approximately two years. It was Mitchell's opinion

that the transition and monitored return would be in the children's best interest. During the transition period, the Department expected for the children and Appellant to communicate "by Skype through the counselor"[2] and for the children to fly to Montana with Mitchell for visits with Appellant that would last "a day or so."

Mitchell did, however, express some concern about separating the children from the mother's other child, N.B.H., because of the bond between the three children. Even though the Department planned for the children to eventually live in Montana with Appellant, Mitchell recommended that the children maintain regular contact with N.B.H. and the children's grandparents.

The CASA volunteer, Deborah Martin, testified that she had visited with the children at least once a month while this case was pending and had developed a relationship with them. According to Martin, CASA recommended that the children be placed permanently with their grandparents and that Appellant be given only possessory conservatorship. Martin testified that her recommendation was based upon Appellant's participation in the children's lives, Martin's interaction with the children, and the children's development during this case. The children had flourished while in the care of their grandparents. Martin did not think that it would be a good idea for the children to move to Montana "to live with [Appellant] at this time." She noted the rather lengthy time that he had been absent from the children's lives, but she agreed that Appellant "should be a part of their lives." Martin testified that her preference would be for the children to live with their grandparents permanently but that, "[a]s an alternative, [she] would be in agreement" with transitional visitations with Appellant that would eventually lead to the children going to live with Appellant.

---

[2]"Skype" is a free or low-cost service that allows individuals to complete voice and video conferences through televisions, telephones, computers, or other mobile communication devices that are equipped with a "webcam" and an internet connection.

At the time of trial, Appellant had lived in Montana for three years. He resided in Montana when the Department became involved with the children, who at the time were in their mother's care. By all accounts, Appellant was financially stable, was gainfully employed, and had a home in Montana that had been approved by the Department after a home study was conducted.

Because no evidence was offered at trial that would show that the appointment of Appellant as the children's managing conservator would significantly impair the children's physical health or emotional development, the trial court abused its discretion in failing to appoint Appellant as a managing conservator of M.J.C.B., Jr. and M.J.B. Appellant's issues are sustained.

## III. *This Court's Ruling*

We reverse the order of the trial court insofar as it relates to the conservatorship of M.J.C.B., Jr. and M.J.B., and we remand the cause to the trial court for reconsideration of that issue. *See Shook v. Gray*, 381 S.W.3d 540, 543 (Tex. 2012) (remanding cause to reconsider conservatorship). We affirm the order of the trial court in all other respects. Because this suit was tried as a child protection case, we are of the opinion that any proceeding on remand to the trial court must be commenced within 180 days of this court's mandate in accordance with Rule 28.4 of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 28.4.

MIKE WILLSON
JUSTICE

November 14, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.