

# NUMBER 13-20-00061-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF M.B., A CHILD

### On appeal from the 37th District Court
### of Bexar County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellant, G.B. (Father), appeals the trial court's judgment denying his petition to modify the 2011 order for conservatorship, possession, and access Father sought to have Appellee, R.A.'s (Mother)[1], periods of possession of and access to the parties' child, M.B., continuously supervised.[2] The trial court denied Father's request for Mother's periods of

---

[1] Appellee has not filed a brief to assist us in the resolution of this appeal.

[2] To protect the identity of the child subject to this suit, we refer to the child and those related to the child by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

possession and access to be continuously supervised; instead, it granted Mother an "extended possession order," as well as the independent right to consent to medical, dental, and surgical treatment for the child, including invasive procedures. The trial court also denied Father's request for attorney's fees. By two issues, Father contends the trial court abused its discretion.[3] We affirm.

## I.  BACKGROUND

This suit was initiated on December 8, 2014, when Father filed a petition to modify the parent-child relationship, seeking to have Mother's periods of possession of the minor child, M.B., continuously supervised. Between December 2014 and December 2018, the trial court entered a series of agreed temporary orders for possession of and access to M.B. The primary change between each temporary order was whether Mother's visits would be supervised and, if so, by whom. Additionally, many of the orders required Mother to submit to hair follicle or urinalysis drug testing.

On December 7, 2018, Mother filed her counter-petition, seeking to be appointed the parent who has the exclusive right to designate the primary residence of the child and for the court to "render a possession order that is in the best interest of the child." On December 20, 2018, the trial court entered additional agreed temporary orders for visitation during the Christmas break, again requiring Mother's visitation be continuously supervised by her parents. During the pendency of this case, Mother submitted to several drug tests—some of which were positive for cocaine or methamphetamine—while others

---

[3] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case from the San Antonio Court of Appeals, we are bound to apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

were negative. Trial on the merits commenced on October 2, 2019. M.B. was fourteen years old at the time trial commenced.

At trial, the trial court heard testimony from Father, Mother, and M.B. Father confirmed that, despite concerns over Mother's drug use, he permitted periods of unsupervised visits between Mother and M.B. without the necessity of a court order. However, because of Mother's intermittent drug use throughout the years, Father sought a final order that would require Mother to submit to random drug tests and continue with supervised visitation. Because Mother presented positive drug tests despite visits being supervised by her parents, Father sought to have her visits supervised by a third party.

Mother admitted to having an extensive drug history, stating that "[her] drug use was crazy" And "[her] life was nothing but drugs." Through intervention by the Department of Family and Protective Services, Mother attended outpatient drug counseling and inpatient drug rehabilitation services. Mother testified that the last time she used illegal drugs was on September 3, 2017. Mother entered the Haven for Hope, a transitional housing facility on October 3, 2017, and she resided there until January 2019. During her residence at Haven for Hope, Mother routinely submitted to and passed urinalysis drug screens. Mother also completed a program to become a pharmacy technician, and later obtained employment with Walgreens.

The parties provided conflicting testimony regarding whether Father failed to take M.B. to the designated exchanges in July 2019. Further, Father admitted to taking away M.B.'s cell phone for disciplinary purposes during the same period, which Mother contends interfered with her ability to communicate with M.B. Mother testified that Father did not allow her to visit M.B. between August and October 2019, due to a positive nailbed drug test. Father refuted Mother's claim, stating that he would have permitted Mother to

3

visit with M.B. if Mother had found a suitable supervisor for the visitation.[4] Despite the lack of visits since July 2019, Mother maintained regular phone contact with M.B. Mother acknowledged that Father is a good father to M.B., that M.B. has excelled in school while living with Father, and that M.B. had no absences and was never tardy.

On October 3, 2019, the trial judge interviewed M.B. in chambers. Neither party made a request for the interview to be on record.[5] Following the interview, the court sent notice to the parties of its ruling.[6] The order was entered during a hearing on November 13, 2019. At the hearing, Father did not object to the order on the basis that Mother's pleadings did not support the judgment. The court continued Father as the parent with the right to designate the primary residence of the child but denied his other requests.

The trial court issued findings of fact and conclusions of law, where it found that although Mother had a problem with drug abuse in the past, Mother sought treatment for the abuse and no longer used drugs. The court also found that M.B. visits regularly with Mother's at Mother's home with M.B.'s maternal grandparents. The trial court further found it to be in M.B.'s best interest for Mother and Father to independently have each right not exclusively designated for Father. Finally, the court found that it is in the child's best interest that Mother have an extended standard possession order. This appeal followed.

---

[4] The last temporary orders provided Mother with visitation "supervised at all times by the maternal grandparents." Although the order also required the parties to make further agreements for temporary orders or return to court, no other temporary orders appear in the clerk's record.

[5] "On the motion of a party . . . the court shall cause a record of the interview to be made when the child is 12 years or older. A record of the interview shall be part of the record in the case." *Id.* § 153.009(f).

[6] The record reveals neither the medium nor the content of the notice.

## II.     STANDARD OF REVIEW

Issues of conservatorship, possession, and access are reviewed for abuse of discretion. *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio, 2007 no pet.). Similarly, "[a]n appellate court reviews the trial court's award of attorney's fees in a suit affecting the parent-child relationship for an abuse of discretion." *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio, 2015 no pet.) (citing *Bruni v. Bruni*, 924 S.W.2d 366. 368 (Tex. 1996)). "A trial court abuses its discretion if it acts without reference to guiding rules or principles (legal issues) or acts arbitrarily or unreasonably (factual issues)." *Gardner*, 229 S.W.3d at 751 (citing *Grayson v. Grayson*, 103 S.W.3d 559, 561 (Tex. App.—San Antonio 2003, no pet.)).

> When an appellant challenges the legal and factual sufficiency of the evidence in cases where the proper standard is abuse of discretion, we engage in a two-prong analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion.

*Id.* (citing *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex. App.—El Paso 2005, no pet.)). "In determining whether the trial court had sufficient information, we use the traditional standards of review for legal and factual sufficiency." *Id.* (citing *Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002) (setting forth standard of review for legal sufficiency); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (setting forth standard of review for factual sufficiency)). However, "challenges to legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion." *Id.* (citing *London v. London*, 192 S.W.3d 6, 14 (Tex.App.—Houston [14th Dist.] 2005, pet. denied)).

When reviewing evidence for legal sufficiency, we must determine whether a scintilla of evidence exists to support the trial court's judgment. *Lenz*, 79 S.W.3d at 13–

14. "[W]e must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Id.* at 13 (citing *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001)). When challenging evidence as factually insufficient to support a finding, the attacking party "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co.*, 46 S.W.3d at 241 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). "In reviewing a 'matter of law' challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* "The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

"When a party attacks the factual sufficiency of an adverse finding on an issue on which []he has the burden of proof, []he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.*at 242 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). We "must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). "In doing so, the court of appeals must 'detail the evidence relevant to the issue' and 'state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.'" *Id.*

In a bench trial, the trial court assumes the role of the jury as the trier of fact. *Yturria v. Kimbro*, 921 S.W.2d 338, 343 (Tex. App.—Corpus Christi–Edinburg 1996, no writ); *see also 2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802,

6

819 (Tex. 2005)). "When findings of fact are filed by the trial court, they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein." TEX. R. CIV. P. 299. "The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony." *2900 Smith, Ltd.*, 301 S.W.3d at 745. When a record is incomplete, we must presume that the missing portion of the record supports the trial court's judgment. *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002)

Generally, in order to raise an issue on appeal, a party must have properly preserved that error at trial. *See In re M.G.N.*, 491 S.W.3d 386, 398 (Tex. App.—San Antonio 2016, pet. denied) (citing *In re Estate of Miller*, 243 S.W.3d 181, 837 (Tex. App.—Dallas 2008, no pet.). "To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record." *Id.*; *see* TEX. R. APP. P. 33.1. An objection to defects or faults in the pleadings should be raised prior to the entry of judgment or such objection shall be deemed to have been waived. TEX. R. CIV. P. 90; *see also Santa Rosa Med. Ctr. v. Robinson*, 560 S.W.2d 751, 758 (Tex. App.—San Antonio 1977, no writ). However, in a nonjury case, a party may raise the issue of factual or legal insufficiency for the first time on appeal. TEX. R. APP. P. 33.1(d).

### III.    APPLICABLE LAW

The primary consideration for determining issues of conservatorship, possession, and access of a child is the best interest of the child. TEX. FAM. CODE ANN. § 153.002; *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (setting forth a non-exhaustive list of factors for consideration in determining the best interest of a child). Further, it is the public policy of the state of Texas to maintain ongoing, healthy relationships between parents and children where it is shown to be appropriate. TEX. FAM. CODE ANN. § 153.001.

7

There is a rebuttable presumption that a standard possession order is in the best interest of a child and provides reasonable *minimum* possession of a child for a parent named joint managing conservator. *Id.* §§ 153.252, 153.312–.316 (setting out the terms of a standard possession order). The terms of an order that restrict or limit a parent's right of possession or access may not exceed those restrictions or limitations that are necessary to protect the best interest of the child. *Id.* § 153.193. In setting out a possession schedule the court may consider, among other things, "the age, developmental status, circumstances, needs, and best interest of the child" as well as the circumstances of the conservator. *Id.* § 153.256; *see also Holley*, 544 S.W.2d at 371-72.

A trial court may order an opposing party to pay reasonable attorney's fees and expenses for another party in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 106.002. However, § 106.002 "does not designate to which party [attorney] fees may be awarded," and "[t]he award of attorney's fees is within the sound discretion of the trial court." *In re R.E.S.*, 482 S.W.3d at 586. Moreover, the party seeking attorney's fees has the burden of proof on the amount and reasonableness of the fees sought. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012). To carry that burden, the applicant must provide enough detail concerning the work performed that the trial court can meaningfully review the request. *Id.* at 764. At a minimum, there must be evidence of "the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Id.*

## IV. DISCUSSION

By two issues, Father asserts that the trial court abused its discretion in denying his requested modification and attorney fees.

8

## A.      Denial of Petition to Modify

By his first issue, Father complains that the trial court erred in (1) denying his requests for Mother's visits with M.B. to be supervised; (2) failing to order Mother to undergo routine drug testing, (3) granting Mother an "extended possession order"; and (4) awarding Mother the independent right to make decisions regarding medical, dental, and surgical treatment involving invasive procedures for M.B. In addition, Father complains that Mother failed to plead for an extended possession order or the independent right to make decisions regarding invasive procedures for M.B.

Although a party may raise issues of factual and legal sufficiency for the first time on appeal, such is not true for defects in pleadings. TEX. R. CIV. P. 90; *see Robinson*, 560 S.W.2d at 758. At the close of trial, Mother's counsel indicated that Mother was requesting an extended possession order without objection from Father[7]. At the hearing on the entry of the order, the trial court asked the parties what objections they had with the judgment, and Father failed to raise any complaint that Mother's pleadings were deficient or otherwise defective. Such failure to object or otherwise notify the court amounts to a

---

[7] The following exchange occurred:

| [Court]: | Let's say she passes, then she wants[?] |
| [Mother's counsel]: | She would like to have – |
| [Court]: | She wants unsupervised? |
| [Counsel]: | Unsupervised. |
| [Court]: | Extended standard[?] |
| [Counsel]: | Extended standard visitation. |
| [Court]: | [To Father's counsel] And you don't agree with that? |
| [Father's counsel]: | No, because we'll back [sic] here. We'll be back here. |

Father did not object to Mother's requested relief based on her failure to properly plead said relief.

9

waiver of the issue that Mother failed to properly plead for the granted relief. Tex. R. Civ. P. 90; TEX. R. APP. P. 33.1(a).

We now turn to Father's insufficiency claims. When determining whether evidence is legally insufficient, we view the evidence that supports the judgment while disregarding all evidence to the contrary. *Lenz*, 79 S.W.3d at 13-14. Here, the trial court found that despite a history of drug use, Mother no longer used drugs. In reviewing that finding, we note that Mother underwent extensive drug treatment, including outpatient and inpatient treatment, sober living, maintained a sponsor, and gained and maintained employment. Mother testified that the last time she used drugs was September 3, 2017. Mother entered the Haven for Hope for treatment, where she remained until January 2019. Additionally, Mother was residing with several other adults and children, including her own son. Finally, the court interviewed M.B. in chambers. *See* TEX. FAM. CODE. ANN. § 153.009(b) (providing that the "court may interview the child in chambers to determine the child's wishes as to possession, access, or any other issue in the suit affecting the parent-child relationship"). Because the interview is not on the record, we must assume the information and evidence heard by the court, support the court's findings. *See Bennett*, 96 S.W.3d at 230.

In reviewing the record for factual sufficiency, we will detail the evidence relative to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the judgment. *Dow Chem. Co.,* 46 S.W.3d at 242. The record clearly establishes that Mother has a history of drug use. In addition to Mother's admission to drug use, Father submitted drug test results reflecting drug use by Mother reported in March 2016 and May 2019. Further, Mother submitted to a drug test on April 10, 2019, but did not have sufficient nail length for testing. The evidence additionally reflects that,

10

at times, the parties agreed to Mother's visitation being supervised either by Mother's parents or a third-party. In addition to Mother's drug history, Father submitted to the court M.B.'s school records which demonstrate M.B.'s success and attendance in school.

Contrasting the evidence both in favor of and contrary to the trial court's findings and judgment, we note a lack of evidence supporting Father's position. First, Father offered no testimony or evidence that Mother's drug use occurred around M.B. or may have affected M.B. *See Holley*, 544 S.W.2d at 371–72 (considering "the emotional and physical danger to the child now and in the future"). In fact, according to Father, M.B. "has progressed appropriately" and "appears to be happy and well-adjusted." Despite some evidence that Mother may have been precluded from exercising some periods of possession, the court found that M.B. regularly visited with her mother at M.B.'s maternal grandparents' home. In other words, the record does not reflect that supervised visitation is necessary to protect M.B.'s best interest. *See* TEX. FAM. CODE. ANN. § 153.193.

As the trier of fact, it is up to the trial court to determine the credibility of the witnesses and weigh the evidence. *2900 Smith, Ltd.*, 301 S.W.3d at 745. Although the evidence demonstrates a positive drug analysis in May 2019, the court must ultimately determine what weight to give that evidence. *Id.* Further, we must presume that the court's interview with M.B. supports the judgment. *See Bennett*, 96 S.W.3d at 230.; *see also* TEX. FAM. CODE. ANN. § 153.256. After reviewing the evidence and argument of counsel, we believe the record is both legally and factually sufficient to support the trial court's exercise of discretion. We overrule Father's first issue.

## B. Denial of Attorney's Fees

In his second issue, Father argues that the court's denial of attorney's fees was an abuse of discretion. Father points to the finding that "the parties to this case have

undergone extensive litigation." Father argues that the suit was necessary to protect M.B.'s best interest because of Mother's history of drug use. However, Texas Family Code § 106.002 states a court *may* order reasonable and necessary attorney's fees, not that it must. TEX. FAM. CODE ANN. § 106.002. The decision to grant or deny attorney's fees, as well as the amount, is well within the discretion of the court. *In re R.E.S.*, 482 S.W.3d at 586. A review of the evidence does not establish that the trial court's denial of attorney's fees is against the great weight of the preponderance of evidence, such that there was an abuse of discretion. *See Lenz*, 79 S.W.3d at 13-14; *see also Dow Chem. Co.*, 46 S.W.3d at 242. We overrule Father's second issue.

## V.     CONCLUSION

The trial court's judgment is affirmed.

GREGORY T. PERKES
Justice

Delivered and filed the
30th day of December, 2020.

12